UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10374-WGY

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * **
                                           *
                                           *
NORTH AMERICAN SPECIALTY                   *
INSURANCE COMPANY                          *
      Plaintiff                            *
                                           *
V.                                         *
                                           *
MARY & JOSEPHINE CORPORATION and           *
MATTEO RUSSO                               *
      Defendants                           *
                                           *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * **
```

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF MATERIAL FACTS OF RECORD AS TO WHICH THE DEFENDANTS CONTEND THERE IS NO ISSUE TO BE TRIED**

Now come the Defendants, who hereby move for summary judgment in their favor on the Plaintiff's complaint for Declaratory Judgment.  As grounds therefore, the Defendants contend that as a matter of law, the marine insurance policy issued by the Plaintiff to the Defendant, Mary & Josephine Corporation (hereinafter "M&J Corp."), for the policy period, August 13, 2003 through August 14, 2004, provided protection and indemnity coverage for the crewmembers of the M&J Corp.'s vessel, the F/V MARY & JOSEPHINE.  As such, coverage was available to satisfy the claims of crewmember, Matteo Russo (hereinafter "Russo"), against the M&J Corp. for the personal injuries he sustained while working aboard the vessel on December 3, 2003.

The Defendants refer the Court to their memorandum of law in support of their motion for summary judgment filed herewith, and pursuant to Local Rule 56.1 further refer the Court to the following "Concise Statement Of The Material Facts Of Record As To Which The Defendants Contend There Is No Genuine Issue To Be Tried."

**DEFENDANTS ALSO REQUEST ORAL ARGUMENT
PURSUANT TO LOCAL RULE 7.2**

**STATEMENT OF THE MATERIAL FACTS OF RECORD AS TO WHICH THE DEFENDANTS CONTEND THERE IS NO GENIUNE ISSUE TO BE TRIED**

1. On or about December 3, 2003, Russo was a crewmember of the fishing vessel, MARY & JOSEPHINE, owned by the Defendant, M & J Corp. (M & J Corp.'s Ans. To Ints., Exhibit A).

2. On or about December 3, 2003, and while the MARY & JOSEPHINE was berthed at the Gloucester State Pier in Gloucester, in Gloucester, MA, Russo was injured while performing repairs on the vessel. (Id.).

3. As of December 3, 2003, the vessel was insured by an insurance policy (policy period August 13, 2003 through August 14, 2004, No. DMM0000003-01) authorized by the Sunderland Marine Mutual Insurance Company (hereinafter "Sunderland"), located in Sunderland England. Sunderland, in turn, placed the policy with the Plaintiff, North American Specialty Co. (hereinafter "NAS"), and NAS issued the policy to the Defendant, M & J Corp. through the Ocean Marine Insurance Agency (hereinafter "Ocean Marine). (Policy, Exhibit B; McVey Deposition, pp. 110-111, Exhibit C).

4.  On or about October 3, 2003, Russo, on behalf of the M & J Corp., called Robert McVey,[1] a "producer" and a senior executive for Ocean Marine, and told him that the MARY & JOSEPHINE had not been fishing since May, 2003 and accordingly, requested that the vessel be placed on port risk coverage from May 2003 until the vessel began fishing again. (McVey Deposition, p. 88-89, 98, Exhibit C; M & J Corp.'s Ans. To Ints., Exhibit A; Russo Deposition[2], p. 64, Exhibit E).

5.  When a vessel is not operational (in this case not fishing) and is berthed at a dock, the vessel often carries "port risk" insurance coverage, which usually results in a reduction of premiums because the insurable risk, i.e., "exposure," is reduced. (See, Scola Deposition, pp. 36-37, Exhibit F).

6.  Mr. McVey told Russo to contact Lynne Houde, a service representative of Ocean Marine, who handles the "paperwork" for Ocean Marine, including but not limited to issuing endorsements when a change is made to an existing policy, and also arranging for return premiums when appropriate. (McVey Deposition, pp. 90-91, 119-120, 141-144, Exhibit C; Houde Deposition, pp. 5-7, Exhibit G).

7.  On or about October 3, 2003, Russo did call Lynne Houde and told her that the vessel had not been fishing since May, 2003, and requested that the vessel be placed on port risk from May 2003 until the vessel began fishing again, most likely in November, 2003. Russo also requested a return premium (port risk credit) for the prior policy year,

---

[1] Mr. McVey, along with Lynne Houde and William Scola, provided deposition testimony as Fed. R. Civ. P. 30(b)(6) designees of the Plaintiff, North American Specialty Insurance Company. (Deposition Notice, Exhibit D; Deposition of McVey, 1/5/05, pp. 5-10, Exhibit C).

[2] The Defendant, Matteo Russo, provided deposition testimony on his behalf and also as the Fed. R. Civ. P. 30(b)(6) designee of the Defendant, Mary & Josephine Corporation. (Russo Deposition, pp. 4-5, Exhibit E).

to reflect the time the vessel had been on port risk during that policy year.(M& J Corp.'s Ans. To Ints, Exhibit A; Houde Deposition, pp. 54, 61-62, 81-83, Exhibit G).

8.     On November 14, 2003, Lynne Houde prepared detailed notes of her recollection of the telephone conversation that she had with Russo on or about October 3, 2003, and wrote down "exactly what he [Russo] told [her]." (Houde Deposition, pp. 61, 81-83, Exhibit G).

9.     Lynne Houde testified that during this conversation, Russo did not tell her that he wanted P&I crew coverage to be eliminated while the vessel was on port risk. (Houde Deposition, pp. 61, 81-83, Exhibit G.).

10.    As a result of Lynne Houde's conversation with Russo, and on the same date that she spoke with Russo, Houde faxed a memorandum to the Underwriter, Sunderland, in which she informed Sunderland of the conversation that she had with Russo. (Houde Deposition, pp. 53-54, 72-73, Exhibit G; 10/03/03 Memo From Houde To "SM," i.e., Sunderland Marine, Exhibit H).

11.    In the memorandum (Exhibit H), Lynne Houde did not request or seek approval for an endorsement and/or change to the existing policy to eliminate and/or exclude P&I crew coverage while the vessel was on port risk; nor did Houde inform Sunderland that Russo had requested or sought such an exclusion. (Id.).

12.    During the time Lynne Houde worked for Ocean Marine, including during the policy period August 13, 2003 through August 14, 2004, Ocean Marine would never issue an endorsement changing crew P&I coverage without first obtaining approval

4

from Sunderland. (Houde Deposition, pp. 88-89, Exhibit G; See, also, Scola Deposition, pp. 11-13, Exhibit F).

13.     On the same date that Lynne Houde spoke with Russo, to wit, October 3, 2003, Houde wrote a follow-up letter to Russo in which she informed him that she had "notified [the] Underwriters" of their conversation, to wit, that the vessel had not been fishing since May, 2003, and that she is "trying to get another Port Risk approved" to the expired policy; that the new effective date for the next port risk is August 13, 2003. (Houde Deposition, p. 101, Exhibit G; 10/03/03 Houde Letter To Russo, Exhibit I).

14.     In the follow-up letter Houde wrote to Russo (Exhibit I), there is nothing in her letter that states or mentions that she asked Sunderland for approval for an exclusion of P&I crew coverage while the vessel was on port risk. (Id.).

15.     On or about December 5, 2003, Robert McVey called and spoke to Russo while he was in the hospital as a result of his injuries on December 3, 2003, and during that conversation, Russo informed McVey that he had been injured while working on the vessel while it was berthed at dock. (McVey Deposition, p. 80, 135-136, Exhibit C; See, 12/05/03 Email From McVey To Sunderland, Exhibit J).

16.     On or about December 5, 2003, McVey sent an email to Sunderland (Exhibit J), informing Sunderland of his conversation with Russo while Russo was in the hospital, and stating therein: "I have just finished going over the claim involving Matt Russo and realized that he is covered as a crewmember. His father Sal is listed as 100% ownership with Matt being the capt. [sic] Matt is listed as part owner on their other 2 vessels F/V Joseph and F/V Damiscota. They are covered for 3-4 men on the Mary and

Josephine…If all goes well hopefully we can keep this claim within reason given the nature of the injuries." (Id.).

17. There is no written documentation from the defendants, no written documentation from Ocean Marine, Sunderland Marine, the Plaintiff, NAS, nor from anyone acting on behalf of the Plaintiff, NAS, Ocean Marine and/or Sunderland quoting and/or stating that Russo had requested that P&I coverage for the crew be eliminated and/or excluded while the vessel is/was on port risk during the policy period of August 13, 2003 through August 14, 2004. (See, McVey Deposition, pp. 141-145, Exhibit C; Scola Deposition, pp. 22-24, 40-48, Exhibit F; Memo, Exhibit H; Letter, Exhibit I).

18. There are no words, no terms, nor any language within the subject policy (Exhibit B), or within any endorsement to the policy (Exhibit K), stating that P&I coverage for crewmembers is/was excluded while the vessel is/was on port risk during the policy period. (Policy, Exhibit B; Endorsement, Exhibit K; See, also, McVey Deposition, pp. 133-134, 137-138, Exhibit C).

19. There is no written documentation from the Plaintiff, NAS, Ocean Marine, Sunderland, or from anyone acting on behalf of NAS, Ocean Marine and/or Sunderland, advising Russo or the M&J Corp., that when a vessel is placed on port risk coverage, there is no P&I coverage for the crew. (Scola Deposition, pp. 22-24, 40-48, Exhibit F; McVey Deposition, p. 162, Exhibit C).

20. Ocean Marine's Robert McVey testified at his deposition that Russo asked for the P&I coverage to be eliminated while the vessel was on port risk, and Russo denies

making such a request. (McVey Deposition, pp. 105-106, Exhibit C; Russo Deposition, p. 119, Exhibit E.).[3]

| | |
|---|---|
| Dated:  January 18, 2006 | The Defendant,<br>Mary & Josephine Corporation,<br>By its attorney,<br><br>s/Bertram E. Snyder<br>_____<br>Bertram E. Snyder, Esquire<br>BBO No. 47130<br>Looney & Grossman, LLP<br>101 Arch Street<br>Boston, MA 02110<br>Phone: (617) 951-2800<br><br>The Defendant,<br>Matteo Russo,<br>By his attorney,<br>JOSEPH G. ABROMOVITZ, P.C.<br><br>s/Joseph G. Abromovitz<br>_____<br>Joseph G. Abromovitz, Esquire<br>BBO No. 011420<br>858 Washington Street, 3rd Floor<br>Dedham, MA 02026<br>Phone:  (781) 329-1080 |

---

[3] Defendants are well aware that a dispute as to who said what usually creates a question of fact rendering a motion for summary judgment inappropriate.   However, and as noted in Defendants' supporting memorandum on page  8, Defendants maintain that the conversation is inadmissible as a matter of law because parol evidence cannot be introduced to vary unambiguous policy terms. Hence, the disputed conversation is irrelevant to the summary judgment issues presented to this Court. (See, also , Defendants' memorandum, argument, II, pp. 8-14).

7

## CERTIFICATE OF SERVICE

I, Joseph G. Abromovitz, hereby certify that on the 18th day of January 2006, I served a copy of this document by first class mail, postage prepaid to the following counsel of record:

Leonard W. Langer, Esquire
Tompkins, Clough, Hirshon & Langer, P.A.
Three Canal Plaza
P.O. Box 15060
Portland, ME 04112-5060

                s/Joseph G. Abromovitz
                _____
                Joseph G. Abromovitz