UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10374-WGY

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
\*
NORTH AMERICAN SPECIALTY       \*
INSURANCE COMPANY              \*
    Plaintiff                 \*
\*
V.                             \*
\*
MARY & JOSEPHINE CORPORATION and \*
MATTEO RUSSO                   \*
    Defendants                \*
\*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The Defendant, Mary & Josephine Corporation (hereinafter "M&J Corp."), is the owner of the F/V MARY & JOSEPHINE. (Russo Deposition, pp. 15-16, Exhibit E).[1] On December 3, 2003, the Defendant, Matteo Russo (hereinafter "Russo"), was injured while working aboard the MARY & JOSEPHINE.

At the time of Mr. Russo's injury, the vessel was insured by an insurance policy authorized by the Sunderland Marine Insurance Company (hereinafter "Sunderland"), located in Sunderland, England. (See, Policy, Exhibit B; McVey Deposition, pp. 110-111, Exhibit C). Sunderland in turn, placed the policy with the Plaintiff, North American Specialty Ins. Co., (hereinafter "NAS"), and NAS issued the policy to the Defendant,

---

[1] Salvatore Russo, Matteo Russo's father, owns 100% of the stock in the Mary & Josephine Corporation. (See, Russo Deposition, pp. 15-16, Exhibit E).

M & J Corp., through the Ocean Marine Insurance Agency (hereinafter "Ocean Marine"). (Id.). The subject policy, numbered DMM0000003-01, covered the period August 13, 2003 through August 14, 2004. (Id.). The policy provided, *inter alia*, protection and indemnity (P&I) coverage (liability insurance) for the crew and hull coverage. (Id.).

On October 3, 2003, and on behalf of the M & J Corp., Russo contacted Robert McVey, Senior Executive for Ocean Marine, to inform him that the MARY & JOSEPHINE had not been fishing since May, 2003, and requested that the vessel be placed on port risk from May, 2003 until the vessel began fishing again. (McVey Deposition, pp. 88-89, 98, Exhibit C; M&J Corp.'s Ans. To Ints., Exhibit A; Russo Deposition, p. 64, Exhibit E). Port risk insurance covers a vessel that is sitting in port for a prolonged period of time, and because the insurable risks of a vessel in port are obviously less than the risks of a ship being navigated on the seas, the cost of port risk insurance is usually less. Trans-World-Marine v. Bouffard Agency, 885 F.2d 332, 334 (6th Cir. 1989); See, Noe Lara v. Arctic King Ltd., et al., 2001 AMC 2665 (W. D. Wash., 2001).

On December 3, 2003, while the MARY & JOSEPHINE was berthed at the Gloucester State Pier in Gloucester, MA., Russo, a crewmember of the vessel, was injured while performing repairs on the vessel involving the installation of a new piece of ship's equipment, an outrigger. (M & J Corp.'s Ans. To Ints., Exhibit A.). On or about January 14, 2004, Russo filed a personal injury suit against the owner of the vessel, M&J Corp., in United States District Court, District of Massachusetts, C.A. No.

04-10108-WGY, alleging *inter alia*, that the injuries he sustained while working on the vessel were a result of the unseaworthiness of the vessel.[2]

On or about February 24, 2004, NAS filed the subject complaint for a declaratory judgment against M & J Corp. and Russo, claiming in essence, that at the time of Mr. Russo's injuries the vessel was on "port risk" and thus carried no P&I coverage for any crewmember. Pursuant to this claim, NAS seeks a judicial declaration that it is not obligated to defend and/or indemnify M&J Corp. with respect to any of Mr. Russo's claims. The Defendants maintain that there is no merit to the plaintiff's claim, and Defendant, M&J Corp., has filed a counterclaim asserting breach of contract and violation of M.G.L. c. 93A for engaging in unfair claim settlement practices in violation of M.G.L. c. 176D, § 3.

The Defendants contend that as a matter of law, the marine insurance policy in effect on December 3, 2003 provided protection and indemnity coverage to crewmembers of the vessel and therefore coverage is available to satisfy the claim of Russo against the M&J Corp. up to the policy limits. Accordingly, the Defendants claim that they are entitled to summary judgment in their favor on the Plaintiff's complaint for Declaratory Judgment as fully argued herein.

## STATEMENT OF THE FACTS

Defendants refer the Court and incorporate by reference hereto, Defendants' "Statement Of The Material Facts Of Record As To Which The Defendants Contend

---

[2] That suit was dismissed without prejudice as the scope of the Plaintiff's injuries could not be determined prior to the anticipated trial date assigned the case. It has since been refiled.

3

There Is No Issue To Be Tried," which is included within Defendants' Motion for Summary Judgment.

## Applicable Law

While the propriety of maritime jurisdiction over a suit involving a maritime insurance policy is unquestionable, marine insurance contracts may be interpreted under state law where there is an absence of controlling maritime law. <u>Acadia Ins. Co. v. McNeil, et al.</u>, 116 F. 3d 599 (1st Cir. 1997); <u>Windsor Mt. Joy Mut. Ins. Co. v. Giragosian</u>, 57 F. 3d 50, 54 (1st Cir. 1995). Since there is no controlling maritime law and/or conflict with state law relative to marine insurance policies and contract interpretation with respect to the issues raised in the instant case, both state and federal maritime cases are referenced herein. See, <u>Federal Marine Terminals, Inc v. Worcester Peat Co.</u>, 262 F. 3d 22 (1st Cir. 2001); See, <u>Carmen Jimenez v. Peninsular & Oriental Steam Navigation Co.</u>, 974 F. 2d 221 (1st Cir. 1992).

## Summary Judgment Disposition Is Appropriate In The Case At Bar

Under Massachusetts law and Federal admiralty law, insurance contracts and the terms therein are to be interpreted by courts as a matter of law. <u>American Home Assurance Company v. Fore River Dock & Dredge</u>, 321 F. Supp. 209, 216 (D. Mass. 2004); <u>See, Carmen Jimenez v. Peninsular & Oriental Steam Navigation Co.,</u> 974 F. 2d 221 (1st Cir. 1992). Whether or not contractual ambiguity exists is also generally a matter of law for the court. <u>Wyner v. North American Specialty Ins. Co.</u>, 78 F. 3d. 752, 754 (1st. Cir. 1996). Unless there is an ambiguity, the terms of an insurance contract are

4

given their plain and ordinary meaning. Jacobs v. United Fid. & Guar. Co., 417 Mass. 75, 76-77 (1994).

In determining whether or not an insurance contract/provision is ambiguous, "doubts as to the meaning of the words must be resolved against the insurance company and in favor of the insured." Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982), quoting, August A. Busch & Co. of Mass., Inc. Co., 339 Mass. 239, 243 (1959). In particular, courts construe exclusionary provisions strictly against the insurer so as not to defeat any intended coverage. Vappi & Co., Inc. v. Aetna Casualty & Surety Co., 348 Mass. 427, 431-432 (1965).

Pursuant to the law in this jurisdiction, summary judgment is appropriate to dispose of the plaintiff's declaratory judgment action in favor of the defendants as a matter of law.

## ARGUMENT

I. **AS A MATTER OR LAW, THE WRITTEN MARINE INSURANCE POLICY IN EFFECT ON DECEMBER 3, 2003 PROVIDED PROTECTION AND INDEMNITY COVERAGE TO CREWMEMBERS OF THE VESSEL AND IS AVAILABLE TO SATISFY THE CLAIM OF MATTEO RUSSO AGAINST THE MARY & JOSEPHINE CORPORATION.**

The written policy in effect at the time of Mr. Russo's injury on December 3, 2003, provided protection and indemnity coverage for injured crewmen. (Exhibit B). There is absolutely nothing in writing from NAS or from Ocean Marine or anyone acting on behalf of NAS or Ocean Marine that amends, alters, or precludes P&I crew coverage as of the date of Russo's injury. (Policy, Exhibit B; See, also purported Endorsement to policy, Exhibit K). Nor did the Rule 30(b)(6) designees for NAS testify otherwise.

For example, 30(b)(6) deponent, Robert McVey, testified that he had seen nothing in the policy or any endorsement thereto issued by or on behalf of NAS that states there was no P&I crew coverage while the vessel was at the dock in December of 2003 when Russo was injured.  (McVey Deposition, Exhibit C, pp. 133-134, pp. 137-138);  Likewise, William Scola, another 30(b)(6) deponent, testified that there were no words in the policy that excluded crew coverage, only an endorsement that reflected the vessel was on port risk.  (Scola Deposition, pp. 22-24, Exhibit F).

The plaintiff has produced a post accident written endorsement, i.e., change to the subject policy, to wit, "Policy Endorsement Number 3" in which the stated policy change is to "...Port Risk only-no fishing effective August 13, 2003 to December 21, 2003." (Endorsement, Exhibit K, See, McVey Deposition, pp. 164-172, Exhibit C). However, the endorsement documents February 14, 2004 as the date of issue, and arguably therefore, was not in effect as of the date of Mr. Russo's injury, December 3, 2003.  (Id.)[3].  Indeed, the Plaintiff has admitted through its 30(b)(6) designee, that had this endorsement not issued there would have been coverage for Mr. Russo's claims. (McVey Deposition, Exhibit C, pp. 170-172)[4]

---

[3] Moreover, all of the plaintiff's 30(b)(6) designees admit as much.  (See, Deposition of McVey, Exhibit C, p. 140, testifying that as of the date of the accident, no endorsement for port risk had issued; See, also, Deposition of Scola, Exhibit F, pg. 49- 50, testifying that prior to and as of December 3, 2003, there was no written endorsement as part of the subject policy; See, Deposition of Lynne Houde, Exhibit G, pg. 85, testifying that there were no written port risk endorsements which were part of the subject policy before December 3, 2003).

[4] It is the claim of the Plaintiff, NAS, that the port risk coverage policy change, as stated within the endorsement, is synonymous with an exclusion of P&I crew coverage during the policy period despite no terms therein expressing such an exclusion.  See, discussion and Defendants' argument to the contrary, infra. pp. 14-17.

Assuming <u>arguendo</u>, that this endorsement was in effect on the date of the accident, said endorsement does not effect a change in the policy excluding P&I coverage for crewmembers. That is, there simply is no language in the written endorsement that excludes P&I crew coverage during the subject policy period and therefore as of the date of Russo's injury December 4, 2003. (Exhibit K). In fact, there is no mention of P&I coverage whatsoever within the endorsement document. (<u>Id</u>.).

Insurance policy provisions excluding coverage must be expressly stated within the policy and/or within any endorsement thereto. <u>See</u>, <u>Makrigiannis v. Nintendo of America, Inc.</u>, 425 Mass. 675 (2004) (Affirming trial court decision finding insurer was liable for indemnification and rejecting claim of coverage exclusion. "Had [the insurer] intended to exclude coverage it could have expressly stated an exclusion."); <u>Liquor Liability Joint Underwriting Ass. Of Mass. v. Hermitage Ins. Co.</u>, 419 Mass. 316 (1995) (Affirming summary judgment against insurance company, finding insurer had duty to defend. "If [the insurer] had intended to prelude coverage, it could have done so in clear and unmistakable language…the subject endorsement fails to state a comprehensive exclusion with adequate clarity."); <u>Trustee of Tufts University v. Commercial Union Ins. Co.</u>, 415 Mass. 844 (1993) (Reversing summary judgment in favor of insurer. "Had the insurers intended to exclude coverage…the insurers could have expressed such an exclusion.).

Such requisite specificity and clarity is consistent with the rule of construction of insurance contracts, to wit, that exclusions from coverages are to be strictly construed against the insurer who drafts the policy. <u>Vappi & Co., Inc. v. Aetna Casualty & Surety</u>

Co., 348 Mass. 427, 431-432 (1965).  As succinctly stated by the Supreme Judicial Court, "We will not read into the policy any purported limitation of liability based on an exclusion not clearly expressed by the drafter."  Liberty Mutual Insurance Co., v. Tabor, 407 Mass. 354, 362 (1990).

The terms of the purported endorsement neither expressly exclude nor even make mention of P&I crew coverage.   (Exhibit K).  Moreover, since the terms within the endorsement as well as the subject policy are patently unambiguous, consideration of parol or extrinsic evidence is not appropriate to vary policy terms and the document therefore speaks for itself.  See, Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 496, 678 N.E.2d 180 (1997); USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass. App. Ct. 108, 116, 546 N.E.2d 888 (1989).

In summary, the terms and language of the policy and of the purported endorsement, are clearly and unambiguously stated.  There is no expressed exclusion for P&I crew coverage while the vessel was on port risk during the subject policy period.   As such, and pursuant to the law in this jurisdiction, said coverage for crew members of the vessel was in effect on the date of Russo's injury and is available to satisfy to policy limits, Russo's personal injury claim against the M&J's Corp.

**II. AS A MATTER OF LAW, THERE WAS NO ORAL CONTRACT TO ELIMINATE PROTECTION AND   INDEMNITY COVERAGE FOR CREWMEMBERS DURING THE SUBJECT POLICY PERIOD.**

    **A.    The Record Demonstrates No Meeting  Of The Minds.**

The Plaintiff claims that at the time of the Defendant, Russo's injury, an oral contract was in effect which excluded P&I crew coverage during the subject policy

period.  NAS bases this claim on the uncorroborated assertion by Robert McVey that Russo specifically requested such an exclusion when he called McVey on or about October 3, 2003 to arrange for port risk coverage.  (McVey Deposition, pp. 105-106), Exhibit C).   Russo categorically denies that he made such a request.  (Russo Deposition, p. 119, Exhibit E).  While ordinarily this disputed fact might preclude summary judgment and is an issue for the fact finder in this non jury case, the issue can readily be settled as a matter of law.

An oral contract like any other contract is a legally enforceable promise between two or more persons.  See, Restatement (Second) of Contracts Section 1 (1981).  In addition to an offer, acceptance and consideration, there must be a "meeting of the minds" or mutuality in order to show that the parties agreed to specific terms and conditions.  Kent v. Dackson, 2004 Mass. Super.  LEXIS 418 (2004) citing, Quinn v. State Ethics Comm'n, 401 Mass. 210, 216 (1987) and Situation Mgmt. Sys. V. Malouf, Inc., 430 Mass. 875, 876 (2000).

When there is no reasonably anticipated evidence to be forthcoming at trial showing a meeting of the minds as to the terms of the alleged oral agreement, summary judgment is appropriate.  See, Lamantea v. Zolla, 14 Mass. L. Rep. 502, 2002 Mass. Super. LEXIS 139.  (Alleged oral contract/agreement not binding since record did not reflect a meeting of the minds and there was no evidence that could be reasonably anticipated at trial to show said meeting of minds).   Such is the situation in the case at bar.  That is, there is no genuine issue of material fact as to whether the parties had a binding oral contract to exclude P&I crew coverage during the policy period, because

the record conclusively demonstrates that there was no meeting of the minds and hence no contract.

As previously noted herein, there are no words, no terms, no language within the subject policy, or within any endorsement to the policy, stating that P&I coverage for crewmembers is/was excluded while the vessel is/was on port risk during the policy of August 13, 2003 through August 14, 2004. (Exhibits B and K). Nor can the Plaintiff, NAS, refer to any memorandum, correspondence, or any other written document authored by it, Ocean Marine, Sunderland, or by anyone acting on behalf of NAS, quoting and/or stating that Russo had orally requested that P&I coverage for the crew be eliminated and/or excluded while the vessel is/was on port risk during the policy period of August 13, 2003 through August 14, 2004. ( McVey Deposition, pp. 141-145, Exhibit C; Scola Deposition, pp. 22-24, 40-48, Exhibit F; Houde Memo, Exhibit H; Houde Letter, Exhibit I). In fact, the relevant documents illustrate just the opposite, and as the defendants contend, these documents together with the 30(b)(6) deposition testimony of Lynne Houde, are fatal to the plaintiff's claim that such a request was ever made.

Specifically, the documents generated by Ocean Marine as a result of Russo's October 3, 2003 call to McVey, while confirming Russo's request for port risk coverage and for a port risk credit, express nothing about an alleged request for P&I crew coverage exclusion. (Exhibits H and I). On the same day Russo called McVey, he called Lynne Houde because McVey told Russo to do so. (See, Houde Deposition, p. 61, Exhibit G). Houde handles the "paperwork" for Ocean Marine, including, *inter alia*,

10

issuing endorsement when a change is made to an existing policy. (McVey Deposition, pp. 90-91, 119-120, 141-144, Exhibit C; Houde Deposition, pp. 5-7, Exhibit G). Following her conversation with Russo and in order to obtain approval for an appropriate endorsement, Houde faxed a memorandum to the Underwriter, Sunderland, notifying Sunderland of Russo's request for a change to port risk coverage rather than for operational coverage. (Houde Deposition, pp. 53-54, 72-73, Exhibit G; Memo, Exhibit H). Therein, Houde made no request for an approval to change, amend or eliminate crew P&I. (Id.) Pursuant to her testimony, such an approval is mandatory before an endorsement to effect such a change can be issued, and as such, she specifically testified that she would never issue an endorsement changing crew P&I without first obtaining an approval from Sunderland Marine. (Houde Deposition, pp. 88-89, Exhibit G).

Not only did the October 3, 2003 memorandum Houde sent to the Underwriter, Sunderland, make no mention of a request for coverage exclusion by Russo, but the follow-up letter Houde sent to Russo also made no mention of any such request. (Letter, Exhibit I). Defendants submit that these documents, generated on the very same day Russo spoke with both McVey and Houde, along with Houde's 30(b)(6) testimony are of critical significance. This record evidence clearly indicates that had Russo made such a request, Houde certainly would have communicated the request for requisite approval to Sunderland, and would have also advised Russo of said communication. She did neither. Moreover, Houde's deposition testimony recalling her conversation with Russo, is fully consistent with both her memo and letter memorializing same. Accordingly, she clearly and definitively testified that Russo did

11

not tell her he wanted an exclusion of P&I coverage while the vessel was on port risk when he spoke to her on October 3, 2003.

> A. …Mr. Russo had called Bobby [Robert McVey]. And he [Russo] called me after that, telling me that he wanted the boat on port risk. It's in my notes right here.
>
> Q. Okay. When was that?
>
> A. October 3rd.
>
> Q. Fine. He told you he wanted the boat on port risk?
>
> A. Yes.
>
> Q. Did he say to you during that conversation that he did not want any P&I crew coverage?
>
> A. He did not tell me that. No.

(Houde Deposition, pp. 61, 81-83, Exhibit G).

This testimony directly contradicts McVey's testimony as follows:

> Q. And did Lynn tell you that she, in fact, spoke with Matt Russo on October 3rd, 2003?
>
> A. Yes.
>
> Q. And what did she tell you that he said to her?
>
> A. He reiterated what he said to me, that he didn't want any crew coverage.

(McVey Deposition, p. 145, Exhibit C).

Plaintiff's claim of an oral request/contract for coverage exclusion rests on McVey's assertion that Russo made such an oral request when he spoke to McVey on October 3, 2003. At a bare minimum, the record evidence demonstrates no meeting of

12

the minds necessary to form such a contract, in that Russo denies making such a request and every relevant document generated by or on behalf of the plaintiff unequivocally supports Russo's denial. Further, the testimony of plaintiff's 30(b)(6) designee, Lynne Houde, not only supports the Defendants' claim that no such request was ever made, but also directly contradicts McVey's testimony and specifically calls into question the veracity of Mr. McVey.

Mr. McVey's veracity is further called into question by his own written words in the email he sent to Sunderland Marine on December 5, 2003. (Exhibit J). Therein, McVey states without equivocation that he "just finished going over the claim involving Matt Ruso [sic] and realized that he is covered as a crew member." (Id.). The email then references Russo's extensive injuries, provides to the underwriter a brief synopsis of the accident, and notes in conclusion "[i]f all goes well hopefully we can keep this claim within reason given the nature of the injuries." (Id.)

At his deposition, McVey essentially denied the truth of these unequivocal admissions and provided a tortuous, nonsensical explanation for a communication that he authored on December 5, 2003, two days following Russo's injury wherein he believed there was coverage for "this claim." For example, he first tried to explain that when he wrote the email "we didn't realize that he was on port risk." (McVey Deposition, p. 84, Exhibit C). McVey subsequently contradicts himself when he denies that when he wrote the email he had forgotten that the vessel was on port risk, "No. I hadn't forgotten. This [the email] is, pretty much a generic makeup for the course of the year. They were covered for three to four men. And when the boat was actively

13

fishing, when they were covered, Matt was a covered crewman." (Id., at p. 85). Relative to McVey's stated hope to "keep this claim within reason" he claims this meant that "we were prepared…to help Matt out financially, regardless of whether he was covered or not." (Exhibit J; McVey Deposition, p. 148, Exhibit C).

Defendants submit that McVey's email and his truly incredible explanation of its meaning, along with the record evidence, completely undermine the veracity of McVey's alleged recollection of Russo's oral request for a policy exclusion, and moreover, completely support Russo's denial of such a request.  Most importantly, even if McVey's uncorroborated recollection/testimony can be considered credible, said testimony demonstrates a patent lack of mutuality, to wit, no meeting of the minds.  In short, there simply is "no evidence that could be reasonably anticipated to be forthcoming at trial at trial to show a meeting of the minds as to the terms of an oral contract" precluding P&I crew coverage during the policy period.  See, Lamatea v. Zolla, 14 Mass. L. Rep. 502, 2000 Mass. Super. LEXIS.  Accordingly, any such alleged oral contract is unenforceable as a matter of law.

      **B.**    **Port Risk Coverage Is Not Synonymous With An Absence of P&I Crew Coverage And Custom And Usage Evidence Is Not Admissible To Show Otherwise.**

Pursuant to case law definition, port risk insurance covers a vessel that is sitting in port for a prolonged period of time, whereas navigation insurance insures a vessel when it is operating on the open seas or on any navigable body of water. Trans-World-Marine v. Bouffard Agency, 885 F.2d 332, 334 (6th Cir. 1989); See also, Bristol Steamship Corp. v. London Assurance, 404 F. Supp. 749 (S.D.N.Y. 1975)  Because the insurable

14

risks of a vessel in port are obviously less than the risks of a ship being navigated on the seas, the cost of port risk insurance is usually less.  See, Noe Lara v. Arctic King Ltd., et al., 2001 AMC 2665 (W. D. Wash, 2001); Trans-World Marine,  885 F. 2d. at 334.   There is absolutely no mention whatsoever in any relevant caselaw that port risk insurance necessarily precludes P&I coverage for the crew.

The Plaintiff's 30(b)(6) designee, William Scola, claimed that it is "common knowledge" that once a vessel is placed on port risk, there is an automatic coverage exclusion for crewmembers. (Scola Deposition, pp. 34-36, 48, Exhibit F).   In effect, the "common knowledge" claim is a recognition of the "custom and practice" within the marine insurance industry.  (See, Id).  Even if the plaintiff can show such a custom and practice, absent ambiguous contractual language in the policy, custom and practice evidence cannot be used to vary the provisions of the insurance policy.  Somerset Savings Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427 (1995).

In Nilsen v. Mutual Marine Office, Inc., 428 F. Supp. 1375 (D. Mass. 1977), the court extensively discussed the admissibility of custom and usage testimony to interpret a marine insurance policy.  Nilsen, much like the case at bar, involved a petition for declaratory judgment brought by a insurer to determine its liability under its "excess" policy, arguing that though the contract was silent on the issue,  custom and practice required the insured to notify the excess carrier of the likelihood that a claim will invade the excess.  Id.  The Court found that when a policy is clear and unambiguous, the law is also clear that custom and practice evidence cannot be used to vary the provisions of the policy.  Id., at 1378-79; See, also,  Eastern Gulf, Inc. v. Metzger

15

Towing, Inc., 910 F.2d 775, 779 (11th Cir. 1990)(Custom and practice evidence not admissible to discern intent of parties relative to whether or not a contract, absent any relevant provision thereto, contemplated payment for standby time in excess of six days of off-loading).

As shown herein, there is absolutely nothing ambiguous about the terms of the policy in effect as of the date of Russo's injuries, and custom and usage evidence is therefore inadmissible. Even if a Court would allow such evidence, the particular, alleged custom and practice was completely unknown to Mr. Russo and to the owner of the vessel. (Russo Deposition, pp. 44-49, Exhibit E). Mr. Scola, a 30(b)(6) designee, could only assume that Mr. Russo would have known, but admitted he had no personal knowledge as to whether or not Mr. Russo was aware of such a custom and practice. (Scola Deposition, pp. 49-50, 53-54, Exhibit F). Moreover, there are no written documents from the plaintiff, NAS, from Ocean Marine, from Sunderland, or from anyone acting on behalf of NAS, advising Mr. Russo or the M&J Corp., that when a vessel is placed on port risk coverage, there is no P&I coverage for the crew. (Scola Deposition, pp. 20-24, 40-48, Exhibit F; McVey Deposition, p. 162, Exhibit C). [5]

Under these circumstances, even if there is/was an ambiguity, which defendants strenuously maintain there is/was not; any such custom and practice evidence is not admissible to prove there was no coverage. Nilsen v. Mutual Marine Office, Inc., 428 F.

---

[5] Accordingly, NAS cannot claim that a complete exclusion of P&I crew coverage is one the M&J Corporation contemplated as a standard provision within marine insurance policies when a vessel is on port risk, nor can NAS claim and/or show that said exclusion is/was such a standard provision. See, Acadia Insurance Company v. Allied Marine Transport LLC, et al.,151 F. Supp. 2d 107, 2001 AMC 2895 (Oral request to lift port risk coverage included commercial use warranty prohibiting coverage for recreational use because it is a standard provision within the subject policy, was known as such by the owner of the vessel, and no record evidence to show that either party intended to eliminate the use warranty when port risk was listed.).

Supp. at 1377 ("Even if there had been such a custom or practice, it would not bind libellant. No one ever told [him] that such a custom existed and he had no actual knowledge that it did…") See, also, Affiliated FM Insurance Co., v. Constitution Reinsurance Corp., 416 Mass. 839, 882 (1994).("…Valid [custom] and usage known to contracting parties, respecting the subject matter or an agreement, are by implication incorporated therein…")(emphasis added).

## CONCLUSION

The marine insurance policy issued by the plaintiff North American Specialty Insurance Company, and in effect on December 3, 2003, provided protection and indemnity coverage to crewmembers of the vessel. As a result, North American Specialty is obligated to defend and/or indemnify the Mary & Josephine Corporation with respect to the claims asserted by Mr. Russo, a crewmember, who on that date was injured while working aboard the vessel.

Dated:  January 18, 2006

The Defendant,
Mary & Josephine Corporation,
By its attorney,

s/Bertram E. Snyder
_____
Bertram E. Snyder, Esquire
BBO No. 471320
Looney & Grossman, LLP
101 Arch Street
Boston, MA 02110
Phone:  617-951-2800

The Defendant,
Matteo Russo,
By his attorney,
JOSEPH G. ABROMOVITZ, P.C.

s/Joseph G. Abromovitz
_____
Joseph G. Abromovitz, Esquire
BBO No. 011420
858 Washington Street, 3rd Floor
Dedham, MA 02026
Phone:  (781) 329-1080

## CERTIFICATE OF SERVICE

I, Joseph G. Abromovitz, hereby certify that on the 18th day of January 2006, I served a copy of this document by first class mail, postage prepaid to the following counsel of record:

Leonard W. Langer, Esquire
Tompkins, Clough, Hirshon & Langer, P.A.
Three Canal Plaza
P.O. Box 15060
Portland, ME 04112-5060

s/Joseph G. Abromovitz
_____
Joseph G. Abromovitz