

Exhibit B



# NORTH AMERICAN SPECIALTY INSURANCE COMPANY
650 Elm Street
Manchester, NH 03101-2524
(800) 542-9200

| Policy Number: | From | To |
|---|---|---|
| DMM0000003-01 | 08/13/03 - 08/13/04 | |
| | 12:01 A.M. Standard Time at the Address of the insured assigned here | |

## COMMERCIAL FISHING VESSEL POLICY DECLARATIONS

| | Transaction: | RENEWAL |
|---|---|---|

**Named Assured and Mailing Address**

Mary & Josephine Corp.
279 Western Avenue
Gloucester, MA 01930

**Producer**

Producer Code: 20018-01
Ocean Marine Insurance Agency
334 Knight Street, Unit 134
Warwick, RI 02886

**Vessel:** F/V Mary & Josephine

Telephone: (401) 732-5300

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage for which a premium is indicated. This premium may be subject to adjustment.

| Coverage | Amount Insured/Rate | Premium |
|---|---|---|
| Hull & Machinery | $400,000 Rate: 3.7188% Ded: $5,000 | $ 14,875 |
| Prot & Ind | $250,000 Ded: $1,500/5,000 | $ 9,625 |
| Single Int Mortgage | $99,489 | $ Included |
| War Risk Hull | $400,000 CSL | $ 200 |
| War Risk P&I | $250,000 CSL | $ 240 |
| No Claims Bonus | 25% | $ -3,718 |

☐ ☐  **FACULTATIVE**

*OCEAN MARINE INS. AGENCY, INC.
334 Knight Street, Warwick, RI 02886-1266
Phone (401) 732-5300  Fax (401) 732-5310
www.omiainc.com*

| Navigation Territory: | See Taylor Form SP-39C Line 173 | |
|---|---|---|
| Navigation Period: | N/A | |

| | | **Policy Premium** | $ 21,222 |

**Conditions (per forms and endorsements attached):**

| Special Conditions | A.I. Hull War Risk | Named Insured | Pollution Exclusion | Endorsement |
|---|---|---|---|---|
| Taylor SP-39C | (12/01/77) | Endorsement | Exclusion of Certified | Acts of Terrorism |
| A.I.S.I.M.(07/01/63) | A.I.M.U P&I Clauses | Occupational Disease | NAS-TERR-009 | (11/02) |
| F.P.A. Machinery | (06/02/83) | Exclusion | | |
| Endorsement | A.H.I.S. War Risk | CL356A | ALL CLAIMS MUST BE | |
| Loss of Earnings | P&I (01/18/70) | CL365 | REPORTED IMMEDIATELY | |
| Endorsement | | | TO AVOID NULLIFYING | |
| | | | INSURANCE COVERAGE !!! | |

**Loss Payee: See Taylor Form SP-39C Lines 7-9**

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

Issuing Office: SMMI

NAS-CFV-DEC.  (06/02)

Issued Date: 08/12/03



In Witness Whereof, the issuing Company has caused this policy to be signed offic

Mary T. Woodhull
Assistant Secretary

Robert M. Sabra
President

NORTH AMERICAN
SPECIALTY INSURANCE COMPANY

NAS-POL-001 (09/01)

## COVERAGES

ASSURED:  *Mary & Josephine Corp.*

VESSEL:  *F/V MARY & JOSEPHINE*

| Coverage* | Rate | Deductible | Premium |
|---|---|---|---|
| Hull | 400,000 | 3.7188 | 5,000 | 14,875.00 |
| P&I | 250,000 | | 1,500/5,000 | 9,625.00 |
| War Hull | 400,000 CSL | | | 200.00 |
| War Hull P&I | 250,000 CSL | | | 240.00 |
| Bow | 99,489 | | No Claims Bonus | Included |
| | | | | -3,718.00 |
| Total | | | | 21,222.00 |

* A zero/blank amount in the Coverage column indicates no coverage under this policy.

In consideration of the premium above stated, Policy No. DMM0000003-01

Of  North American Specialty Ins. Co.

Issued to  Mary & Josephine Corp.

Whose address is  279 Western Avenue
Gloucester, MA  01930

Is renewed for the term of Noon  **August 13, 2003**    to    **August 13, 2004**
at the place of issuance, for the amount
as shown above.  Subject to the terms
and the conditions as attached hereto.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY | Policy Change Number  N/A |
|---|---|---|---|
| DMM0000003-01 | 08/13/03 | North American Specialty Ins. Co. | |

| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
|---|---|---|
| Mary & Josephine Corp. | F/V Mary & Josephine | Ocean Marine Insurance Agency, Inc. |

**COVERAGE PARTS AFFECTED**

Section I & II

## CHANGES

The corporate named Assured and word Assured where used in this policy includes not only individuals endorsed thereon by name but also any Partner, Executive Officer, Director or Stockholder of such Assured as is now or may hereafter be considered.

IL 12 01 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright ISO Commercial Risk Services Inc. 1983

Authorized Representative Signature

Page 1 of 1

Assured::   'Mary & Josephine Corp.

Special Conditions for Commercial Fishing Vessels

F/V MARY & JOSEPHINE

These Special Conditions supercede any conflicting conditions found in any of the attached policies, clauses or endorsements.

1) LOSS TO OR BY GEAR: This policy shall not respond for any claim for loss, or damage to or expenses in connection with fishing or trawling equipment (i.e. tackle, apparel, winches, masts and booms, rigging and their appurtenances) occurring while such equipment is actually being used in fishing or trawling operations and/or operations incidental thereto, unless the assured shall establish that such loss, damage or expense was caused solely by fire, lightning or explosion, or caused by the vessel herself stranding, sinking due to a peril insured against or in collision with any object other than the water.

2) LEGAL OPERATIONS: This insurance shall not cover charges, damages of loss in consequence of seizure, or detention for or account of any illicit or prohibited trade nor for entering nor for the consequence of entering prohibited fishing waters nor for violations of any port regulation nor for any claims for wages, or provisions furnished to officers, or crew while the property insured hereunder may be detained as a result of any violation, seizure, detention or loss or disaster or during any subsequent salvage and/or repairs.

3) CARGO EXCLUDED: This insurance is warranted free from all claims of whatever nature in connection with cargo.

4) GEAR ON SHORE: It is understood and agreed that should any part of the vessel, her apparel, furniture, fixtures, equipment, boats, or gear be separated and laid up on shore during the period of this policy, including fishing gear and tackle laid up on shore during the period of this policy, including fishing gear and tackle laid up on shore against risk of fire only as the vessel herself is laid up and out of commission, then this policy shall cover the same against risk of fire only for an amount not to exceed the proportion of 15% of the insured value of the vessel.

5) FISHING VESSEL HULL AMENDMENT: It is hereby understood and agreed Line 11 of the Taylor Form 1953(Rev. 70) is deleted and the following clause substituted in lieu thereof;
A "Hull, tackle, apparel, equipment, stores on board, furniture, fixtures, fishing gear and tackle while on board and boats (including fishing gear and tackle therein while on board or attached to the davits of the fishing vessel)."

B. "Boilers, machinery, refrigerating machinery and insulation, winches, motor generators and other electrical machinery, and everything connected therewith."

C. "Cranes, windlasses and steering gear shall be deemed to be part of the Hull and not the Machinery."

6) REPORTING: The assured shall within forty-eight hours after arrival in port, report any loss or damage and shall give prompt notice thereof by telegraph and mail to the Broker of Record, Ocean Marine Insurance Agency Inc. 334 Knight St., Warwick, RI 02886 and in no event will any claim be admitted by this company unless such notice in writing has been presented within sixty days from the occurrence of same.

7) CLAIMS CO-OPERATION: The assured shall render every assistance to facilitate investigation or adjustment of claims or the effecting of settlements and to co-operate fully in the securing of evidence, the attendance of witnesses and the eliciting of information in defending such claims, including the prosecuting of appeals, it being understood that failure to comply fully with the provisions of this paragraph shall render the policy null and void and that, in the event, no further obligation of any character shall rest upon the company.

8) ADDITIONAL CREW: The company agrees to accept this insurance on the basis of the premium being calculated on the normal complement of crew declared at the inception of the risk, with additional crew held covered. Any additional crew above the normal complement of crew declared at the inception of the risk will be held covered for an additional premium. It is the Assured's responsibility to promptly notify the company of any such additional crew on board the vessel.

9) WAR RISKS: Notwithstanding the Free of Capture, seizure, etc., warranty contained herein it is agreed that the Assured is protected and indemnified as shipowner in respect of liabilities and expenses which he shall have become liable to pay and shall have in fact paid in respect of the vessel named herein for the following:

Loss of damage caused by or indirectly due to contact with any mine, torpedo, bomb or other munitions or engines of war let off or put in any war or during hostilities, war-like operations, civil war, revolution, rebellion, insurrection of civil strife arising therefrom, prior to inception of risks hereunder.

10) CANCELLATION: This insurance may be canceled at any time by the Underwriters upon twenty (20) days written notice. The Underwriters must send notice to the Assured's last address known to them. If notice is mailed, proof of mailing will be sufficient notice. This insurance may be canceled by the Assured upon twenty (20) days written notice to the Underwriters. If this policy is canceled by the Underwriters, a pro-rata return of premium will be issued. If canceled by the Assured, short rate cancellation return of premium will be issued. This cancellation provision in no way affects any wording of the attached policies, clauses or endorsements calling for automatic termination or cancellation of the insurance.

North American Specialty Ins. Co.

SP - 39C

1953
(Rev. 70)

TAYLOR

1
2    In consideration of the premium and the stipulations, term and conditions hereinafter mentioned, this company
3    does hereby insure:
4    Assured: Mary & Josephine Corp.
5
6    Loss, if any, payable to        Assured-
7                                    FIRST PIONEER FARM CREDIT, ACA*
8                                    P.O. BOX 3306
9                                    NORTHBROOK, IL 10065
10   Whose address is:     279 Western Avenue, Gloucester, MA 01930
                            FIRST PIONEER FARM CREDIT CORP.*
                            P.O. BOX 3306
                            MIDDLEBORO MA 02346

10   Upon the:  1979    - Fishing Vessel - Documentation #603558 - called F/V MARY & JOSEPHINE
11   Her hull, tackle, apparel, engines, boilers, machinery, appurtenances, equipment, stores, boats and furniture.
12   From the 13th day of August        2003      Beginning and ending
13   Until the 13th day of August       2004      at noon standard time at place of issuance

| AMOUNT INSURED HEREUNDER | RATE | PREMIUM | AGREED VALUATION |
|---|---|---|---|
| $ 400,000 | 3.7188 | $ 14,875 | $ 400,000 |

14

15   Touching the adventures and perils which this company is contented to bear and take upon itself, they are of the
16   waters named herein, fire, lightning, earthquake, assailing thieves, jettison, barratry of the master and mariners and all
17   other like perils that shall come to the hurt, detriment or damage of the vessel named herein.

18   This insurance also covers loss of or damage to the vessel named herein caused by explosion on shipboard or
19   elsewhere.

20   This insurance also covers loss of or damage to the vessel named herein directly caused by:
21      Accidents in loading, discharging or handling cargo, or in bunkering;
22      Accidents in going on or off, or while on drydocks, graving docks, ways, marine railways, gridirons or
23      pontoons;
24      Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of
25      boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and expense of
26      replacing or repairing the defective part);
27      Breakdown of or accidents to nuclear installations or reactors not on board the vessel named herein;
28      Contact with aircraft, rockets or similar missiles, or with any land conveyance;
29      Negligence of master, mariners, engineers or pilots;
30      Negligence of charterers and/or repairers, provided such charterers and/or repairers are not Assured(s)
31      hereunder;
32      provided such loss or damage has not resulted from want of due diligence by the Assured, the owners or managers
33      of the vessel, or any of them.

34   General average, salvage and special charges payable as provided in the contract of affreightment, or fail-
35   ing such provision, or there be no contract of affreightment, payable in accordance with the laws and usages
36   of the port of New York. Provided always that when an adjustment according to the laws and usages of the
37   port of destination is properly demanded by the owners of the cargo, general average shall be paid in accordance
38   with same.

39   And it is further agreed that if the vessel named herein and/or her tow, if any, shall come into collision with any
40   other ship or vessel other than her tow, if any, and the assured in consequence of the vessel named herein being at
41   fault shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect
42   of such collision, this Company will pay its proportion of such sum or sums so paid as the amount insured of hereunder bears
43   to the agreed valuation of the vessel named herein, provided always that this Company's liability in respect of any one such
44   collision shall not exceed the amount insured hereunder. And in cases where the liability of the vessel named herein has
45   been contested or proceedings have been taken to limit liability, with the consent in writing of this Company, this
46   Company will also pay a like proportion of the costs which the assured shall thereby incur, or be compelled to pay; but when
47   both vessels are to blame, then, unless the liability of the owners of one or both such vessels becomes limited by law, claims
48   under this collision liability clause shall be settled on the principle of cross-liabilities as if the owners of each vessel
49   had been compelled to pay to the owners of the other of such vessels such one-half or other proportion of the latter's
50   damages as may have been properly allowed in ascertaining the balance or sum payable by or to the assured in consequence
51   of such collision. Provided always that this clause shall in no case extend to any sum which the assured may directly,
52   indirectly, or otherwise incur or become liable to pay or pay for; removal, destruction or abatement of, or any
53   attempt of failure or neglect to remove, destroy or abate obstructions or wrecks and/or their cargoes or any hazard
54   resulting therefrom, loss of, or damage to, or expense, including demurrage and/or loss of use thereof, in connection with
55   any fixed or movable object, property or thing of whatever nature (excepting other vessels and property thereon); loss of
56   or damage to her cargo, baggage or engagements or other property on board her tow; loss of life of, or loss of life of, or
57   injury to, or illness of, any person. And provided also that in the event of any claim under this clause made by or to
58   anyone other than the owners of the vessel named herein, he shall not be entitled to recover in respect of any liability to
59   which the owners of the vessel as such would not be subject, nor to a greater extent than the owners would be entitled in
60   such event to recover.

*Total and/or constructive total loss only

In case of any loss or misfortune it shall be lawful and necessary for the assured, their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the vessel named herein, or any part thereof, without prejudice to this insurance, to the charges whereof this Company will contribute as hereinafter provided. It is agreed that the acts of the assured or this Company, or their agents, in recovering, saving and preserving the property insured in case of disaster shall not be considered a waiver or an acceptance of an abandonment, nor as affirming or denying any liability under this Policy, but such acts shall be considered as done for the benefit of all concerned, and without prejudice to the rights of either party.

Warranted that in case of any casualty or loss which may result in a claim under this policy the assured shall give this Company prompt notice thereof and reasonable opportunity to be represented on a survey of the damage, and to name a surveyor, which two surveyors shall proceed to determine the extent of the damage and the work required to make the damage good. If the two surveyors agree, such specifications shall be binding on both the Company and the assured, subject nevertheless to policy terms and conditions and the question of whether or not the disaster and resulting loss or damage are covered by this policy. In the event the two surveyors cannot agree, they must select an umpire, and in the event they cannot agree upon an umpire, either party hereto may apply to the United States District Court for the district in which the home port of the vessel named herein is located for the appointment of an umpire, pursuant to the United States Arbitration Act. The decision of the umpire so appointed shall have the same force, and effect as the specifications aforesaid. When specifications have been drawn in either of the modes aforesaid, if the assured may obtain for the repair of the damage as specified by said survey, then this Company may require the surveyors or the umpire to submit the specifications prepared as aforesaid to shipyard, repair men, boat builders and shipwrights, as may be selected by such surveyors or the umpire, with a request for bids for such repairs. If after reception of such bids, the assured shall elect to accept some other bid than that of the lowest bidder, this Company shall be liable only for its proportion of so much of the sum actually expended to effect repairs specified by the surveyors for its account as does not exceed said lowest bid. In no event however shall this Company respond for an amount in excess of its proportion of the amount actually expended by the assured in effecting such repairs.

With respect to physical loss or damage to the vessel named herein this Company shall be liable only for such proportion of such loss or damage as the amount insured hereunder bears to the agreed valuation.

In the event of expenditure under the sue and labor clause, this Company will pay the proportion of such expenses that the amount insured hereunder bears to the agreed valuation of the vessel named herein, or that the amount insured hereunder, less loss and/or damage payable under this policy, bears to the actual value of the salved vessel, whichever proportion shall be the less.

When the contributory value of this vessel named herein is greater than the agreed valuation stated herein the liability of this Company for general average contribution (except in respect of amount made good to the vessel) or salvage shall not exceed that proportion of the total contribution due from the vessel that the amount insured hereunder bears to the contributory value, and if because of damage for which this Company is liable as particular average the value of the vessel has been reduced for the purpose of contribution, the amount of the particular average claim under this policy shall be deducted from the amount insured hereunder and this Company shall be liable only for the proportion which such net amount bears to the contributory value.

The sum of $5000 shall be deducted from the total amount of any or all claims (including claims for sue and labor, collision liability, general average and salvage charges) resulting from any one accident. This deduction does not apply to claims for total or constructive total loss. For the purpose of this clause each accident shall be treated separately, but it is agreed that a sequence of damages arising from the same accident shall be treated as due to that accident.

In case of loss, such loss to be paid in thirty days after satisfactory proof of loss and interest shall have been made and presented to this Company, (the amount of any indebtedness due this company from the assured or any other party interested in this policy being first deducted).

Upon making payment under this policy the Company shall be vested with all of the assured's rights of recovery against any person, corporation, vessel or interest and the assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

Any agreement, contract or act, past or future, expressed or implied, by the assured whereby any right of recovery of the assured against any vessel, person or corporation is released, decreased, transferred or lost which would, on payment of claim by this Company, belong to this Company but for such agreement, contract or act shall render this policy null and void as to the amount of any such claim, but only to the extent and to the amount that said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of this Company but the Companies rights to retain or recover the full premium shall not be affected.

This Company shall have the option of naming the attorneys who shall represent the assured in the prosecution or defense of any litigation or negotiations between the assured and the third parties concerning any claim, loss or interest covered by this policy, and this company shall have the direction of such litigation or negotiations. If the assured shall fail or refuse to settle any claim as authorized by the Company, the liability of Company to the assured shall be limited to the amount for which settlement could have been made.

It is a condition of this policy that no suit, action or proceeding for the recovery of any claim for physical loss of or damage to the vessel named herein shall be maintainable in any court of law or equity unless the same be commenced within twelve (12) months next after the calendar date of the happening of the physical loss or damage out of which the said claim arose. Provided, however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted, by the laws of such State, to be fixed herein.

128    In event of damage, cost of repairs to be paid without deduction of one-third, new for old.

129    If claim for total loss is admitted under this policy and sue and labor expenses have been reasonably incurred in excess
130    of any proceeds realized or value recovered, the amount payable under this policy will be the proportion of such expenses
131    that the amount insured hereunder (without deduction for loss or damage) bears to the agreed valuation or the sound value
132    of the vessel named herein at the time of the accident, whichever value was greater.

133    It is a condition of this insurance that this Company shall not be liable for unrepaired damage in addition to a total or
134    constructive total loss.

135    No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and repairing the
136    vessel named herein shall exceed the agreed valuation.

137    In ascertaining whether the vessel named herein is a constructive total loss the agreed valuation shall be taken
138    as the repaired value, and nothing in respect of the damaged or break-up value of the vessel or wreck shall be taken into
139    account.

140    In the event of total or constructive total loss, no claim is to be made by this Company for freight, whether notice of
141    abandonment has been given or not.

142    Any deviation beyond the navigation limits provided herein shall void this policy, but on the return of the vessel in a
143    seaworthy condition, within the limits herein provided, this policy shall reattach and continue in full force and effect, but
144    in no case beyond the termination of this policy.

145    Warranted that there shall be no other insurance covering physical loss or damage to
146    the vessel named herein other than that which is provided in lines 15 through 33 hereof but permission is granted to carry
147    other insurance whatever kind or nature not covered by this policy or additional amounts of insurance of the kind or
148    nature covered by this policy other than as provided in lines 15 through 33.

149    This insurance shall be void in case this policy or vessel named herein, shall be sold, assigned, transferred or
150    pledged, or if there by any chance of management or charter of the vessel, without the previous consent in writing of this
151    company.

152    Notwithstanding anything to the contrary contained in this policy, this insurance is warranted free from any claim
153    for loss, damage or expense caused by or resulting from capture, seizure, arrest, restraint or detainment, or the con-
154    sequences thereof or of any attempt thereat, or any taking of the vessel, by requisition or otherwise, whether in time of
155    peace or war and whether lawful or otherwise; also from all consequences of hostilities or warlike operations (whether
156    there be a declaration of war or not), but the foregoing shall not exclude collision or contact with aircraft, rockets or
157    similar missiles, or with any fixed or floating objects (other than a mine or torpedo), stranding, heavy weather, fire or
158    explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in
159    the case of collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power,
160    and for the purpose of this warranty "power" includes any authority maintaining naval, military or air forces in as-
161    sociation with a power, also warranted free whether in time of peace or war, from all loss, damage or expense caused
162    by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or
163    matter.

164    Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising
165    therefrom, or piracy.

166    If war risks are hereafter insured by endorsement on the policy, such endorsement shall supersede the
167    above warranty only to the extent that their terms are inconsistent and only while such war risk endorsement remains in
168    force.

169    Warranted free of loss or damage in consequence of strikes, lockouts, political or labor disturbances, civil
170    commotions, riots, martial law, military or usurped power or malicious acts.

171    Either party may cancel this policy by giving ten day's notice in writing; if at the option of this Company pro rata
172    rates, if at the request of the assured short rates, will be charges-and-arrival.

173    **NAVIGATION LIMITS - SPECIAL CONDITIONS - ENDORSEMENTS, ETC.**

Navigation limit understood to be confined to the Atlantic Ocean,
including its tributary waters, not east of 60 degrees West Longitude nor
north of 44 degrees North Latitude, nor south of 35 degrees North
Latitude, however, permitted to trade other waters solely to procure bait
and supplies.

As per attached Special Conditions, Clauses and Endorsements.

174    Attached to and made part of Policy No. DMX0000003-01 of the North American Specialty Ins. Co.

EFFECTIVE: AUG 13 03

ENDORSEMENT TO POLICY

ISSUED TO: Mary & Josephine Corp.                                F/V MARY & JOSEPHINE

## F.P.A. MACHINERY

It is understood and agreed that this policy shall not respond for any claims for loss or damage to machinery and appurtenances, unless directly caused by stranding, sinking, fire or collision with another vessel. This exclusion, however, does not apply to the propeller and propeller shaft.

Date printed: **August 12, 2003**

All other Terms and Conditions of this policy remain unchanged.

This endorsement forms part of policy No. **DMM0000003-01 of the**

North American Specialty Ins. Co.

AMERICAN INSTITUTE
SINGLE INTEREST MORTGAGEE FORM
July 1, 1963

12

**ASSURED**

To be attached to and form a part of Policy No. DAIA10000003-01 of the North American Specialty Ins. Co.

insuring    FIRST PIONEER FARM CREDIT, ACA
P.O. BOX 720
MIDDLEBORO, MA 02346

as Mortgagee, for account of themselves, for the interest described below, said Mortgagee being herein referred to as "the Assured".

**INTEREST**

Upon the interest of the Assured, as Mortgagee of the vessel F/V    MARY & JOSEPHINE
(hereinafter referred to as "the Vessel")

**LOSSES PAYABLE**

Loss, if any, payable to Assured or order.

**SUM INSURED**

NINETY-NINE THOUSAND FOUR HUNDRED EIGHTY-NINE AND 00/100    Dollars ***
Part of    NINETY-NINE THOUSAND FOUR HUNDRED EIGHTY-NINE AND 00/100    Dollars ***
insured this interest, being the unpaid principal amount of a valid mortgage held by the Assured on the Vessel, reducing pro rata to the
extent of payments made on account of the mortgage indebtedness.  This Policy also insures interest earned and unpaid to date of loss,
which, however, with the unpaid balances, shall not exceed the sum insured hereunder.

**TERM**

At and from the    13th day of August        . 2003    . Eastern Standard time,
to the    13th day of August        . 2004    . Eastern Standard time.

**TERM**

These Underwriters to be paid in consideration of this insurance $ as agreed
being at the rate of    as agreed        % per annum of the sum initially at risk hereunder.

**CANCELLATION**

This Policy (other than for non-payment of premium) may be cancelled by either party on 30 days notice in writing.  Such notice, when
given by these Underwriters, shall be deemed to have been given at such time as written notice shall have been  mailed to the Assured at
its last known address or telegraphic notice sent thereto.  A written or telegraphic notice sent through the brokers who negotiated this
Policy or by them, at the request of these Underwriters, shall operate to effect cancellation of this Policy in the same manner as if sent
directly by these Underwriters.  Net unearned premium to be returned in the event of cancellation by either party as aforesaid.

In the event of non-payment of premium 30 days after attachment, this Policy may be cancelled by these Underwriters upon 5 days'
written notice being given the Assured in the form provided for above.  Such proportion of the premium, however, as shall have been
earned up to the time of such cancellation shall be due and payable, but in the event of payment by these Underwriters of the sum insured
hereunder by reason of non-payment by underwriters of the Hull Policy of a claim asserted thereunder for any liability, loss, damage or
expense of, to or in respect of the Vessel occurring or arising prior to cancellation, the full annual premium shall be deemed as earned.

**TERMINATION**

Unless otherwise agreed in writing by these underwriters, the insurance afforded by this Policy shall terminate in the event that there
has been a change, voluntary or otherwise in the ownership of the vessel or it has been placed under new management or chartered on a
bareboat basis or requisitioned on that basis.

**CONDITIONS OF
ATTACHMENT AND
DURATION OF RISK**

1. It is a condition of this insurance that during the term of this Policy:
   (a) the vessel is covered by policies of insurance on the form and in the amount specified below:

Policy No. DAIA10000003-01        Taylor SP-39C        Hull Value        $400,000

   (b) the Assured is named as a loss payee in the policies above described, which are herein referred to collectively and separately and
defined as "the Hull Policy".

(Continued on following page)

2. This Policy insures only against the non-payment by underwriters of the Hull Policy, of a claim asserted thereunder for any liability, loss, damage or expense occurring or arising during the term of this Policy, which non-payment results from any act of or omission by, the assured(s) named in the Hull Policy, or breach of any warranty, express or implied, in the Hull Policy other than breach of warranty contained in the F.C.&S. Clause thereof;

PROVIDED that such act or omission or breach of warranty occurred without the consent or privity of the Assured.

**EXCLUSIONS**

3. The insurance afforded by this Policy does not cover:

    (a) the non-payment of a claim for any liability, loss, damage or expense, or any part thereof;

        (i) collectible under the Hull Policy or which would be collectible thereunder except for the insolvency of the underwriters thereon; or

        (ii) not recoverable under the Hull Policy by reason of any deductible or franchise included therein; or

        (iii) which has been satisfied, repaired or discharged prior to payment of a claim hereunder; or

    (b) any claim of the Assured arising solely out of the insolvency of the owner of the vessel.

In no event shall these Underwriters indemnify or contribute to, pro rata or otherwise, underwriters of the Hull Policy.

**CONDITIONS PRECEDENT TO CLAIM**

4. As a condition precedent to any claim hereunder, these Underwriters;

    (a) the underwriters of the Hull Policy must have denied the claim for any liability, loss, damage or expense which is the subject of a claim hereunder; and

    (b) the Assured shall have instituted suit against underwriters to collect such claim.

**SUBROGATION OF UNDER-WRITERS**

5. (a) These Underwriters, upon payment of a loss under this Policy, shall, to the extent of such payment, be subrogated to all of the rights of the Assured under the Hull Policy, the Mortgage on the Vessel and any note or bond secured thereby, and under any other instrument taken by the Assured as security for the repayment of the mortgage indebtedness. On the request of these Underwriters, the Assured shall execute and deliver all documents necessary to effect a valid assignment of the said policy, mortgage, note or bond, and any other instrument taken by way of security as aforesaid, and of all the right, title and interest of the Assured therein. Any net sum recovered by these Underwriters in excess of the amount due to them by reason of their rights of subrogation as aforesaid shall be held for the account of the Assured.

    (b) If any event occurs which does or could give rise to a claim under this Policy, the Assured shall not in any way, whether by act or failure to act, impair these Underwriters' rights of subrogation as aforesaid. Any claim under this Policy shall be reduced to the extent that such rights of subrogation have been impaired.

**NOTICE OF POSSIBLE CLAIM AND SURVEY**

6. (a) The Assured shall, as soon as practicable, report to these Underwriters any denial of liability by the Underwriters of the policies described in Clause "1" hereof for a claim thereunder which denial could result in a claim under this Policy.

    (b) Whenever requested, Assured shall arrange for attendance at any hull survey of a surveyor appointed by these Underwriters.

The terms and conditions of this Policy are to be regarded as substituted for those of the policy to which it is attached, the latter being hereby waived, except provisions required by law to be inserted in this Policy.

Marginal captions are inserted for purposes of convenient reference only and are not to be deemed part of this Policy.

NAME OF ASSURED: Mary & Josephine Corp.

**F/V  MARY & JOSEPHINE**

TYPE:                     Marine Insurance

## LOSS OF EARNINGS ENDORSEMENT

In addition to any damage (particular average) claim under Hull and Machinery section, this insurance shall pay to the insured 1% of the Hull and Machinery sum insured daily pro rata for every 30 day period, whilst undergoing resultant repairs, but excluding the first 30 days, for a period of 150 days thereafter, subject to a minimum payment of $1,440       and a maximum payment of $28,800 any one claim. No payment can be made for any period the vessel is prohibited from fishing whilst repairs were carried out nor following total loss or constructive total loss.

ENDORSEMENT TO POLICY

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF POLICY NO.  DMM0000003-01

EFFECTIVE DATE OF THIS ENDORSEMENT:   **August 13, 2003**

BY

North American Specialty Ins. Co.

*AMERICAN INSTITUTE

870-108

## Hull War Risks and Strikes Clauses
(Including Automatic Termination and Cancellation Provisions)
For attachment to American Institute Hull Clauses
December 1, 1977

To be attached to and made part of Policy No. **DMM10000003-01 of the North American Specialty Ins. Co.**

Issued to: **Mary & Josephine Corp.**

This insurance, subject to the exclusions set forth herein, covers only those risks which would be covered by the attached Policy (including collision liability) in the absence of the WAR, STRIKES AND RELATED EXCLUSIONS clause contained therein but which are excluded thereby and which risks shall be construed as also including:

1. Any mine, bomb or torpedo not carried as cargo on board the Vessel;
2. Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;
3. Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom;
4. Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power;
5. Malicious acts or vandalism to the extent only that such risks are not covered by the attached Policy;
6. Hostilities or warlike operations (whether there be a declaration of war or not) but this paragraph (6) shall not include collision or contact with aircraft, rockets or similar missiles, or with any fixed object, or strand-ing, heavy weather, fire or explosion unless caused directly by a hostile act by or against a belligerent power which act is independent of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other Vessel involved therein, is performing. As used herein, "power" includes any authority maintaining naval, military or air forces in association with a power.

## EXCLUSIONS

This insurance does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of:

a. Any hostile detonation of any weapon of war described above in paragraph (2);
b. Outbreak of war (whether there be a declaration of war or not) between any of the following countries: United States of America, United Kingdom, France, the Union of Soviet Socialist Republics or the People's Republic of China;
c. Delay or demurrage;
d. Requisition or preemption;
e. Arrest, restraint, or detainment under customs or quarantine regulations and similar arrests, restraints or detain-ments not arising from actual or impending hostilities;
f. Capture, seizure, arrest, restraint, detainment, or confiscation by the Government of the United States or of the country in which the Vessel is owned or registered.

## HELD COVERED AND OTHER PROVISIONS

The held covered clause appearing under the heading ADVENTURE in the attached Policy is deleted and the follow-ing clause substituted therefore:

"Subject to the provisions of the Automatic Termination and Cancellation Clause below, held covered in the event of any breach of conditions as to loading or discharging of cargo at sea, or towage or salvage activities provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured."

If at the natural expiry time of this insurance the Vessel is at sea, this insurance will be extended, provided previous notice be given to the Underwriters, for an additional premium at a rate to be named by the Underwriters, until midnight Local Time of the day on which the Vessel enters the next port to which she proceeds and for 24 hours thereafter, but in no event shall such extension affect or postpone the operation of the Automatic and Cancellation Clauses below.

Warranted not to abandon in case of capture, seizure or detention, until after condemnation of the property insured.

The provisions of the attached Policy with respect to constructive Total Loss shall apply only to claims arising from physical damage to the vessel.

## AUTOMATIC TERMINATION AND CANCELLATION CLAUSES

A.  This insurance and any extension thereof, unless sooner terminated by the provisions of section B or C, shall terminate
45  automatically upon and simultaneously with the occurrence of any hostile detonation of any nuclear weapon of war
46  as defined above, wheresoever or whensoever such detonation may occur and whether or not the Vessel may be
47  involved.
48

B.  This insurance and any extension thereof, unless sooner terminated by the provisions of section A or C, shall termi-
49  nate automatically upon and simultaneously with the outbreak of war, whether there be a declaration of war or not,
50  between any of the following countries: United States of America, United Kingdom, France, the Union of Soviet
51  Socialist Republics or the People's Republic of China;
52

C.  This insurance and any extension thereof, unless sooner terminated by section A or B, shall terminate automatically
53  if and when the Vessel is requisitioned, either for title or use.
54

D.  This insurance and any extension thereof may be cancelled at any time at the Assured's request, or by Underwriters
55  upon 14 days written notice being given to the Assured, but in no event shall such cancellation effect or postpone
56  the operation of the provisions of section A, B or C.  Written or telegraphic notice sent to the Assured at his(tis)
57  last known address shall constitute a complete notice of cancellation and such notice mailed or telegraphed to
58  the said Assured, care of the broker who negotiated this insurance, shall have the same effect as if sent to the
59  said Assured direct.  The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date
60  and hour of cancellation shall be 14 days from midnight Local Time of the day such notice was mailed or
61  telegraphed as aforesaid.  Underwriters agree, however, to reinstate this insurance subject to agreement between
62  Underwriters and the Assured prior to the effective date and hour of such cancellation as to new rate of premium
63  and/or conditions and/or warranties.
64

## RETURN OF PREMIUM

The RETURNS OF PREMIUM clause of the attached Policy is deleted and the following substituted therefore:-
65  "In the event of an automatic termination or cancellation of this insurance under the provisions of sections
66  A, B, C or D above, or if the vessel should be sold, pro rata net return of premium will be payable to the Assured,
67  provided always that a Total Loss of the Vessel has not occured during the currency of this Policy.  In no
68  other event shall there be any return of premium."
69

70  THIS INSURANCE SHALL NOT BECOME EFFECTIVE IF, PRIOR TO THE INTENDED TIME OF ITS ATTACHMENT, THERE
71  HAS OCCURRED ANY EVENT WHICH WOULD HAVE AUTOMATICALLY TERMINATED THIS INSURANCE UNDER THE
72  PROVISIONS OF SECTIONS A, B, OR C HEREOF HAD THIS INSURANCE ATTACHED PRIOR TO SUCH OCCURRENCE.

AIMU
PROTECTION AND INDEMNITY (P AND I) CLAUSES
(JUNE 2, 1983)

1 To be attached to and from part of Policy No. DNM0000003-01 of North American Specialty Ins. Co., (hereinafter "the
2 Underwriters").
3 THE FOLLOWING CLAUSES ARE SUBSTITUTED FOR THOSE OF THE POLICY FORM TO WHICH
4 THEY ARE ATTACHED. THE LATTER BEING VOID, EXCEPT FOR THOSE PROVISIONS REQUIRED
5 BY LAW. CAPTIONS, BELOW ARE FOR EASE OF REFERENCE ONLY AND ARE NOT TO BE USED TO
6 INTERPRET THE CLAUSES.

7 ASSURED
This Policy insures     Mary & Josephine Corp.
                        279 Western Avenue
                        Gloucester, MA 01930

8
9 (hereinafter, "the Assured"). The Underwriters waive all rights of subrogation against affiliated or subsidiary compa-
10 nies of the Assured but only to the extent that the liabilities of such companies are uninsured.

11 VESSEL
11 The underwriters will indemnify the Assured in respect of the matters set forth at lines 46 through 76, below, subject
12 to all the other terms, hereof, in respect of the F/V MARY & JOSEPHINE of 97 gross registered tons hereinafter, the
13 "Vessel"). If more than one vessel is named, all clauses shall apply as though a separate Policy had been issued for
14 each vessel.

15 DURATION OF RISK
15 This Policy attaches on August 13 2003           at noon o'clock Eastern Standard time and expires on
16 August 13 2004          , at noon o'clock Eastern Standard time. Should the vessel be at sea at the expiration of
17 this Policy, or in distress, or at a port of refuge or call, she shall be held covered until she reaches her port of destina-
18 tion, provided prior notice be given to the Underwriters and provided the Assured agrees to any amended terms of
19 cover and additional premium if required by the Underwriters.

20 LIMIT OF LIABILITY
20 Liability hereunder in respect of all consequences of any one casualty or occurrence, including defense costs, shall not
21 exceed the sum of $250,000           less any applicable deductible, regardless of how many separate injuries or
22 claims arise out of such casualty or occurrence.

23 DEDUCTIBLES
23 There shall be deducted from the total amount payable by the underwriters with respect to all claims, including costs
24 of defense and expenses, arising from any one casualty or occurrence:
25 a) $ 1,500          with respect to those claims for loss of life, bodily injury or illness, and
26 b) $ 5,000          with respect to all other claims;
27 PROVIDED, HOWEVER, that the maximum deductible for any one casualty or occurrence shall not exceed the
28 greater of the foregoing amounts.

29 PREMIUM
30 The Underwriters are to be paid premium of $ As Agreed  for this insurance, payable as follows:
31                                            In full on inception

32 RETURN PREMIUM
32 If the Vessel is sold, demise chartered or requisitioned this Policy shall terminate on the date and at the hour when
33 such disposition of the Vessel is effective and the Underwriters will return premium on a pro rata daily net basis for the
34 unexpired term. If the Policy is cancelled by the Assured, the Underwriters will return premium on the usual short rate
35 daily net basis for the unexpired term. If the Policy is cancelled by the Underwriters they will return premium on a pro
36 rata daily net basis for the unexpired term.

37 CANCELLATION
37 The Policy may be cancelled by the Underwriters or by the Assured upon fifteen days written or telegraphic notice.
38 The Underwriters may send notice to the Assured's last address known to them, or to the broker of record at the time
39 when notice is given. At noon local time at the place of sending of the notice on the fifteenth day after such notice
40 shall have been mailed, telegraphed or telexed, the Policy shall cease to be in effect. The Policy may also be cancelled
41 at any time by mutual agreement of the Assured and the Underwriters.

42 TRADING WARRANTY
42 Warranted that the Vessel shall be confined to
   Navigation limit understood to be confined to the Atlantic Ocean, including
   its tributary waters, not east of 60 degrees West Longitude nor north of 44
   degrees North Latitude, nor south of 35 degrees North Latitude, however,
   permitted to trade other waters solely to procure bait and supplies.
43
44
45

INDEMNITY

Subject to all exclusions and other terms of this Policy the Underwriters agree to indemnify the Assured for any sums which the Assured, as owner of the Vessel, shall have become liable to pay, and shall have paid, in respect of any casualty or occurrence during the currency of the Policy but only in consequence of any of the matters set forth here-under provided, however, that if the interest of the Assured is or includes interests other than the owner of the Vessel, the Underwriters' liability shall not be greater than if the Assured was the Owner entitled to all defenses and limita-tions of liability to which a shipowner is entitled:

(1) Loss of life and bodily injury, but excluding amounts paid under any compensation act.

(2) Hospitals, medical or other expenses necessarily and reasonably incurred with respect to loss of life, bodily injury to, or illness of, any person.

(3) Crew member burial expense not to exceed $1,000 per person.

(4) Repatriation expense of crew member, excepting such as arise from the termination of any agreement in accordance with its terms, or the sale of the vessel or other voluntary act of the Assured. Wages may be included in such expenses when a statute requires payment of wage while awaiting and during repatriation.

(5) Damage of any fixed or movable object or property, howsoever caused, excepting however, damage to another Vessel or any property aboard it caused by collision with the Vessel.

(6) Cost or expense of, or incidental to, any attempted or actual removal or disposal of obstructions, wrecks or their cargoes under statutory power or otherwise pursuant to law, provide, however, that there shall be deducted from such claim for cost or expense, the value of any salvage from the wreck inuring to the benefit of the Assured or any subrogee thereof.

(7) Fines and penalties, including expenses reasonably incurred in avoiding or mitigating same, for the violation of any of the laws of the United States, or any State thereof, or of any foreign country; provided, however, that the Underwriters shall not be liable to indemnify the Assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws.

(8) Extraordinary expense arising from an outbreak of contagious disease; provided that the Vessel was not ordered by anyone acting on behalf of the Assured to proceed to a port where such disease was known or supposed to exist.

(9) Costs incurred with the written consent of the Underwriters, or reasonably incurred prior to receipt of advices from Underwriters, for investigation and defense of claims, valid or not, within the scope of the Policy.

(10) Port charges incurred solely for the purpose of putting in to land an injured or sick seaman or passenger, and the net loss to the Assured in respect of bunkers, insurance, stores and provisions as the result of the deviation.

EXCLUSIONS

Notwithstanding anything to the contrary elsewhere herein the Underwriters will not indemnify the Assured in respect of any of the following matters:

(A) Any liability assumed under contract or otherwise.

(B) Liability imposed on the Assured as punitive or exemplary damages, however described.

(C) Any liability for any loss of, damage to, or expense in respect of, cargo or other property (including baggage and personal effects of passengers, mail, and parcel post) carried, to be carried, or which had been carried on board the Vessel, except, however, such liability imposed under the doctrine of cross liabilities for cargo on board the Vessel for which there is no coverage under any other Policy held by the Assured.

(D) Any liability or claim for, or any loss of, damage to, or expense in respect of property owned, leased, chartered or hired by the Assured.

(E) Engagement in unlawful trade or performance of an unlawful act with knowledge of the Assured.

(F) Cancellation or breach of any contract.

(G) Bad debts.

(H) Fraud, dishonesty or insolvency of the Assured, its agents or others.

(I) Salvage charges, special charges, general average, freight, detention, demurrage or loss of use, of the Vessel.

(J) Any liability for, or any loss, damage, or expense arising from or accruing by reason of the towage of any other vessel or craft other than emergency towage of a vessel in distress at sea to a port or place of safety, except, however, this exclusion shall not apply to claims for loss of life, or bodily injury to, or illness of any person. Emergency towage is deemed to be towage undertaken as a salvage service while the Vessel is on a voyage wholly unrelated to performance of such service.

(K) Any liability for, or any loss, damage or expense while engaged in, or resulting from, any commercial diving operation or service from the Vessel, except, however, any liability incurred when the Vessel's crew is engaged in inspection or repair of the Vessel which could not be deferred until commercial divers were available.

controlled.

(L) Any liability for, or any loss, damage, injury or expense resulting from nuclear radiation, fission or fusion whether such loss, damage, injury or expense has been caused directly or indirectly or has arisen from any matter for which the Assured has responsibility or otherwise, and whether the nuclear event be controlled or un-controlled.

(M) Any liability for, or any loss, damage, injury or expense caused by, resulting from or incurred by reason of any one or more of the following:

1) Capture, seizure, arrest, taking, restraint, detainment, confiscation, preemption, requisition or national-ization, or the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

2) Any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter, or by any mine, bomb or torpedo;

3) Hostilities or warlike operations (whether there be a declaration of war or not), but the phrase, "hostilities or warlike operations (whether there be a declaration of war or not)", shall not exclude collision or contact with aircraft, rockets or similar missiles or with any fixed or floating object, heavy weather, fire or explosion unless caused directly (independently of the nature of the voyage or service which the watercraft concerned or in the case of a collision, any other vessel involved herein, is performing) by a hostile act by or against a belligerent power, for the purpose of the foregoing, power includes any authority maintaining naval, military or air forces in association with a power. In addition to the foregoing exclusion, this in-surance shall not cover any loss, damage or expense to which a warlike act or the use of military or naval weapons is a contributing cause, whether or not the Assured's liability therefore is based on negligence or otherwise, and whether in time of peace or war. The embarkation, carriage and disembarkation of troops, combatants, or material of war, or the placement of the watercraft in jeopardy as an act of measure of war taken in the actual process of a military engagement, with or without the consent of the Assured, shall be considered a warlike act for the purposes of this Policy;

4) The consequences of civil war, revolution, rebellion, insurrection, military or usurped power, the imposition of martial law, or civil strife arising therefrom, or piracy, or from any loss, damage or expense caused by or resulting directly or indirectly from the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, ideological or terrorist purposes, and whether any loss, damage or expense resulting therefrom is accidental or intentional;

5) Malicious acts or vandalism, strikes, lockouts, political or labor disturbances, civil commotions, riots, or the acts of any person or persons taking part in such occurrence or disorder.

(N) Any liability for, or any loss, damage, cost, expense, fine or penalty of any kind or nature whatsoever, whether statutory or otherwise, incurred by or imposed on the Assured, direct or indirectly, in consequence of, or with respect to, the actual or potential discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of substances of any kind or nature whatsoever.

## GENERAL CONDITIONS

### NOTICE OF LOSS

It is a condition of this Policy that the Assured give prompt notice to the Underwriters of any casualty or occurrence which may result in a claim under this Policy

### FORWARDING OF PROCESS

It is a condition of this Policy that the Assured forward to the Underwriters, promptly upon receipt, copies of all communications, legal process and pleadings relating to any casualty or occurrence which may result in a claim under this Policy.

### SETTLEMENT OF CLAIMS

1) It is a condition of this Policy that the Assured shall not make any admission of nor agree to assume any liability either before or after any casualty or occurrence which may result in a claim under this Policy.

2) It is a condition of this Policy that the Assured shall take such steps to minimize and avoid liability, before and after any casualty or occurrence, as would be taken by a prudent uninsured person.

3) The Underwriters shall have the option of naming the attorneys who shall represent the Assured in the prose-cution or defense of any litigation or negotiations between the Assured and the third parties concerning any claim covered by this policy; and in any event, the Underwriters shall direct the progress of such litigation or nego-tiations.

4) If the Assured shall fail, or refuse, to settle any claim authorized by the Underwriters, the liability of the Under-writers shall be limited to the amount for which settlement could have been made plus legal fees and disbursements incurred to the date the Assured fails or refuses to settle any such claim, less the amount of any deductible provided for in this policy. If thereafter any amount is recovered against the Assured in excess of the amount of any settle-ment not authorized by the Underwriters (less the deductible), such excess amount, plus any additional legal fees and disbursements, shall be solely for account of the Assured.

### CLAIM COOPERATION

The Assured shall aid in securing information, evidence, obtaining witnesses, and shall cooperate with the Under-writers in the defense of any claim or suit in the appeal from any judgement in respect of any casualty or occurrence as hereinbefore provided.

### SUBROGATION

The Underwriters shall be subrogated to all the rights which the Assured may have against any other person or entity, in respect of any payment made under this Policy, to the extent of such payment, and the Assured shall, upon the request of the Underwriters execute and shall deliver such instruments and papers as the Underwriters shall require and do what ever else is necessary to secure such rights. In the event of any agreement to act, past or future, by the Assured, whereby any right of recovery of the Assured against any person or entity is released or lost to which the Underwriters on payment of loss would be entitled to subrogation, but for such agreement or act, the Underwriters shall be relieved of liability under this Policy to the extent that their rights of subrogation have been impaired thereby; in such event the right of the Underwriters to retain or collect any premium paid or due hereunder shall

165 not be effected. The Underwriters shall not be liable for the costs and expenses of prosecuting any claim or suit
166 unless the same shall have been incurred with the written consent of the Underwriters, or the Underwriters shall
167 be satisfied that such expenses could not have been obtained under the circumstances without unreasonable delay
168 and that such costs and expenses were reasonably and properly incurred, such costs and expenses being subject to
169 the deductible. The Underwriters shall be entitled to take credit for any profit accruing to the Assured by reason
170 of any negligence or wrongful act of the Assured's servants or agents, up to the measure of their loss, or to recover
171 for their own account from third parties any damage that may be provable by reason of such negligence or
172 wrongful act.

OTHER INSURANCE
173 Provided that where the Assured is, irrespective of this insurance, covered or protected against any loss or claim
174 which would otherwise have been paid by the Underwriters under this Policy, there shall be no contribution or par-
175 ticipation by the Underwriters on the basis of excess, contributing, deficiency, concurrent, or double insurance
176 or otherwise.

ASSIGNMENTS
177 Neither this Policy nor any claim or demand against the Underwriters under this Policy shall be assigned or trans-
178 ferred, and no person, excepting a legally appointed receiver of the property of the Assured, shall acquire any right
179 against the Underwriters by virtue of this insurance without the express consent of the Underwriters endorsed hereon.
180 This Policy shall cease to be in effect 10 days after appointment of a receiver, trustee or any other transferee of the
181 Assured's assets.

TIME FOR SUIT CASE
182 No action shall lie against the underwriters for the recovery of any loss sustained by the Assured unless such action
183 be brought against the Underwriters within one year after the final judgment or decree is entered in the litigation
184 against the Assured, or in case the claim against the Underwriters accrues without the entry of such final judgement
185 or decree, unless such action be brought within one year from the date of the payment by the Assured of such claim,
186 provided, however, that where such limitation of time is prohibited by the law of the State wherein this Policy
187 is issued, then, and only in that event, no action under this Policy shall be sustainable unless commenced within the
188 shortest limitation permitted under the law of such state.

Warranted 3-4 Crew Excluding Owners

AMERICAN HULL INSURANCE SYNDICATE
WAR RISK PROTECTION & INDEMNITY CLAUSES
JANUARY 18, 1970

SP-22B

To be attached to and made part of Policy No. DMM0000003-01 of the North American Specialty Ins. Co.

F/V **MARY & JOSEPHINE**

Insuring **Mary & Josephine Corp.**
**279 Western Avenue**
**Gloucester MA 01930**

A. This insurance is also to cover the liability of the assured for Protection and Indemnity Risks excluded from Marine Protection and Indemnity Policies commonly issued by stock insurance companies in the United States by the following or a substantially similar F.C. & S. Clause:

"Notwithstanding anything to the contrary contained in this policy, no liability attaches to the company, directly or indirectly, for or in respect of any loss, damage or expense sustained by reason of any taking of the vessel by requisition or otherwise, civil war, revolution, rebellion, or insurrection, or civil strife arising therefrom, capture, seizure, arrest, restraint or detainment, or the consequences thereof or of any attempt thereat; or sustained in consequence of military, naval or air action by force of arms, including mines and torpedoes or other missiles or engines of war, whether of enemy or friendly origin; or sustained in consequence of placing the vessel in jeopardy as an act or measure of war taken in the actual process of a military engagement, including embarking or disembarking troops or material of war in the immediate zone of such engagement; and any such loss, damage and expense shall be excluded from this policy without regard to whether the Assured's liability therefore is based on negligence or otherwise, and whether before or after a declaration of war."

B. This insurance includes liability of the assured arising out of strikes, riots and civil commotions and for contractual repatriation expenses of any member of the crew as a result of perils excluded by the aforesaid F.C.&S. Clause.

C. The Underwriters agree to accept the same percentage interest under these clauses as accepted under the Hull War Risks and Strikes Clauses.

D. The liability of the Underwriters under these clauses in respect of any one accident or series of accidents arising out of the same casualty shall be limited to the Amount Insured Hereunder.

E. Claims for which the Underwriters shall be liable under these clauses shall not be subject to any deduction.

F. This Protection and Indemnity Insurance shall terminate automatically at the same time as the insurance afforded by the Hull War Risks and Strikes Clauses and upon the terms and conditions contained in the Automatic Termination and Cancellation provisions of said Clauses.

G. Notwithstanding the provisions of Clause F, in event of loss or shipwreck of the vessel from any cause prior to the natural expiry time or automatic termination of this policy, this insurance shall continue to cover the liability of the assured to the crew of the insured vessel, subject to its terms and conditions and at an additional premium if so required by Underwriters, until the crew shall be either discharged or landed at a port or place to which the owners or charterers are obliged to bring them.

H. Notwithstanding any of the foregoing provisions all liabilities covered by the Second Seaman's form of policy are excluded from this insurance.

All other terms and conditions remaining unchanged.

Dated

Signed

Type:        Marine Insurance

Vessel:      F/V MARY & JOSEPHINE

Assured:     Mary & Josephine Corp.

OCCUPATIONAL DISEASE EXCLUSION

Excluding occupational disease unless it can be established the disease was contracted during the insured period and then only to the extent the disease can be proven.

This endorsement is attached and made part of Policy No. DMM0000003-01

All other Terms and Conditions remain the same.

Effective Date of this endorsement: August 13, 2003

North American Specialty Ins. Co.

# ENDORSEMENT # 1

Date
AUG 12 03

| Name and Address of Broker | Name and Address of Insured |
|---|---|
| ROBERT C. McVEY<br>OCEAN MARINE INSURANCE AGENCY<br>WARWICK RI 02886-0114 | Mary & Josephine Corp.<br>279 Western Avenue<br>Gloucester MA 01930 |

| Name of Insurance Company | Policy Number | | |
|---|---|---|---|
| North American Specialty Ins. Co. | DMM0D00003-01 | | |
| | **Policy Period** | | |
| | (Effective)<br>AUG 13 03 | (Expiration)<br>AUG 13 04 | |

| Effective Date and Time of Change | New Premium (If changed) |
|---|---|
| AUG 13 03 | |

## INSTITUTE EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1. In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from:

1.1 Ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel.

1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

CL356A

## INSTITUTE CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, ELECTROMAGNETIC WEAPONS AND CYBER ATTACK EXCLUSION CLAUSE

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1. In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from:

1.1 any chemical, biological, bio-chemical or electromagnetic weapon

1.2 the use or operation, as a means for inflicting harm, of any computer, computer system, computer software program, computer virus or process or any other electronic system.

CL365

(Authorized Signature)

# ENDORSEMENT # 2

Date
AUG 12 03

| Name and Address of Broker | Name and Address of Insured |
| --- | --- |
| ROBERT C. MCVEY<br>OCEAN MARINE INSURANCE AGENCY<br>WARWICK RI 02886-0114 | Mary & Josephine Corp.<br>279 Western Avenue<br>Gloucester MA 01930 |

| Name of Insurance Company | Policy Number | DMM0000003-01 | |
| --- | --- | --- | --- |
| North American Specialty Ins. Co. | Policy Period | (Effective)<br>AUG 13 03 | (Expiration)<br>AUG 13 04 |

| Effective Date and Time of Change<br>AUG 13 03 | New Premium (If changed) |
| --- | --- |

## POLLUTION EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that any loss, damage, liability or expense caused by, resulting from, or incurred in consequence of the discharge, spillage, emission, or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever and including the destruction of vessels or property arising out of any action taken to avoid, minimize or remove such discharge, spillage, emission, or leakage which might otherwise be recoverable hereunder is hereby excluded from coverage under this policy.

(Authorized Signature)

NORTH AMERICAN
SPECIALTY INSURANCE COMPANY
MANCHESTER, NH

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

A. The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. The following exclusion is added:

CERTIFIED ACT OF TERRORISM EXCLUSION

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

C. Application Of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© ISO Properties, Inc., 2002