UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10374-WGY

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*
\*
NORTH AMERICAN SPECIALTY              \*
INSURANCE COMPANY                     \*
    Plaintiff                         \*
                                      \*
V.                                    \*
                                      \*
MARY & JOSEPHINE CORPORATION and      \*
MATTEO RUSSO                          \*
    Defendants                        \*
                                      \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

**DEFENDANTS' REPLY TO PLAINITFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

In its opposition to defendants' (hereinafter "M&J Corp.") motion for summary judgment, North American Specialty Ins. Co. (hereinafter "NAS") lists 36 statements of material facts in support of its statement that the Court is confronting "a classic factual dispute". (NAS opposition, p.2.). Of the 36 statements, only six (Nos. 13, 17, 23, 33, 34, 35) refer to any writing for support. Moreover, the referenced writings are totally irrelevant to the specific, material facts at issue. This is very understandable since the truly relevant paper trail completely undermines NAS' argument that there exists a disputed material factual issue. Further, the record evidence referenced by NAS to "contest" the defendants' statements of undisputed material facts, paragraphs, 9, 11, and 18, clearly does <u>not</u> in any way counter these critical undisputed facts of record. (NAS opposition, p. 6: See, also, Defendants' "Statement Of The Material Facts Of Record..." paragraphs, 9, 11, 18 and supporting exhibits).

1

M&J Corp. has always recognized that Matteo Russo and Robert McVey have diametrically opposite memories of their single telephone conversation in October, 2003 concerning whether P&I coverage was to be continued when the FV MARY & JOSEPHINE was put on port risk coverage. (M&J Corp. statement of undisputed fact no. 20).   Similarly, M&J Corp. does not contest that a valid oral insurance contract can exist; only that it does not exist in the context of the instant facts.

A key question for the Court remains as stated in M&J Corp.'s initial memorandum; that is, whether or not the conversation between McVey and Russo, considering all the other evidence introduced by both parties is even admissible.  If not, NAS' oral contract argument is totally without factual support.

In its opposition, NAS virtually ignores M&J Corp.'s "no meeting of the minds" argument relative to NAS' alleged oral request by the Defendants for an exclusion of P&I crew coverage.   (M&J Corp. memo pp. 8-14).  NAS provides one conclusory sentence in response to this argument, to wit, "defendants assert that modification could not have occurred in this instance because there was no meeting of the minds." (NAS memo p.11).  NAS also  avoids reference to that part of the testimony of its Rule 30(b)(6) designee,  Lynanne Houde, Mr. McVey's co-worker, wherein Ms. Houde totally contradicted Mr. McVey's testimony on the critical issue of whether she even discussed P&I crew coverage with Matteo Russo, when he called her relative to placing the vessel on port risk.  (M&J Corp. memo pp. 11-12).  She did not, nor as she testified, did Mr. Russo ever request an exclusion of P&I coverage while the vessel was on port risk during the subject policy period. (See, Defendants' "Statement Of The Material Facts Of Record..." paragraphs 8-10 and supporting exhibits).

NAS tries to claim that the "scope", i.e., meaning, of port risk coverage is an issue of fact, not law. (NAS memo, p. 9). NAS further claims that when a vessel carries port risk coverage custom and usage evidence defines such coverage to automatically exclude P&I crew coverage. NAS' argument cannot stand. For one, and as more fully argued in Defendants' summary judgment memorandum, under established federal maritime law custom and usage evidence/testimony is <u>only</u> admissible if the contract is ambiguous. <u>Commercial Union Ins</u>. <u>Co., v. Charlestown Marine Leasing, Co</u>., 1995 U.S. App. LEXIS 8762 (4th Cir. 1995) (emphasis added); <u>U.S., Eastern Gulf, Inc. v. Metzger Towing, Inc</u>., 910 F. 2d 775, 779 (11th Cir. 1990); <u>Nilsen v. Mutual Marine Office, Inc.</u>, 428 F. Supp. 1375, 1378-79 (D. Mass. 1977). Stated somewhat differently, "[u]nder federal maritime law, a court 'may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous.' " <u>U.S. Eastern Gulf, Inc., v. Metzger Towing, Inc</u>., 910 F. 2d at 795, <u>quoting, Corbitt v. Diamond M. Drilling Co.</u>, 654 F. 2d 329, 332-333 (5th Cir. 1975, <u>cert</u>. <u>den</u>., <u>H.B. Buster Hughes, Inc. v Ocean Drilling and Exploration Co</u>., 423 U.S. 1050 (1976).

As is evident by the subject policy and port risk endorsement, there is nothing ambiguous or unclear in either document. Nor are there any words or terms therein stating or defining port risk coverage to mean what NAS claims it means, to wit, that port risk coverage is synonymous with an exclusion of P&I crew coverage.

Secondly, even if this Court should consider custom and usage evidence, pursuant to the federal court decisions/case law in this jurisdiction, NAS cannot meet the admissibility threshhold. <u>Nilsen v. Mutual Marine Office, Inc</u>.; 428 F. Supp. 1375, 1380,1381 (D. Mass. 1977); <u>Rose and Lucy, Inc. v. Resolute Ins. Co</u>., 249 F. Supp. 991, 992 (D. Mass. 1965). That is, to be admissible the custom and practice "must be shown to have been so general that a

3

contracting party will be presumed to have had knowledge of it, in order to make it part of the contract..." Nilsen v. Mutual Marine Office, Inc., 428 F. Supp. at 1381, quoting, Pennington v. Styron, 270 N.C. 80, 85, 153 S.E. 2d 776, 780 (1990). (In Nilsen, the Court noted that "there was not a shred of evidence to indicate that the custom and practice was so widespread that anyone outside of the New York insurance industry should be presumed to know it.")  Simply stated, "[w]here a custom or practice of the insurance business is not known to the purchaser of insurance and not shown to be commonly known outside the insurance business itself, this court cannot hold that the custom is effective..."  Rose and Lucy, Inc. v. Resolute Ins. Co., 249 F. Supp. 991, 992 (D. Mass. 1965)(emphasis).

   NAS has no evidence of a "widespread" custom and practice, but merely and ineffectually points to its Rule 30(b)(6) designees' years of experience, and their self-serving position that "when a vessel is placed on port risk, no P&I coverage is provided unless there is a specific request for such coverage." (NAS opposition, p. 5, paragraphs, 26-29).  NAS has proferred no evidence to show that such a custom and practice is commonly known outside of even the office of its agent, OMI, nor is of such general knowledge that M&J, the contracting party, should be  "presumed" to have had knowledge of it. "   NAS also has no credible evidence that Russo and/or M&J Corp. had actual knowledge of such a custom or practice. Russo denies such knowledge, and NAS has no documentary evidence to show otherwise, and in particular none to show that NAS, Ocean Marine, Sunderland, or anyone acting on behalf of NAS, Ocean Marine and/or Sunderland, ever advised Russo or the M&J Corporation that when a vessel is placed on port risk coverage, there is no P&I coverage for the crews.  (See, Defendants' Statement Of Material Facts Of Record..." paragraph 19 and supporting exhibits).

Further, the Plaintiff misconstrues if not misrepresents, the Defendants' reference to legal authority in regard to the judicially understood meaning/definition of port risk coverage. Contrary to the Plaintiff's assertion, the case law **does** address the scope of port risk coverage; it just does not support the Plaintiff's definition of said coverage.  That is, port risk coverage is defined as coverage for a vessel that is not navigational but is in port, and therefore, the cost of port risk insurance is usually less because the risks of a vessel in port are obviously less than the risks of a vessel in navigation. Trans-World-Marine v. Bouffard Agency, 885 F.2d 332, 334 (6th Cir. 1989); See also, Bristol Steamship Corp. v. London Assurance,  404 F. Supp. 749 (S.D.N.Y. 1975)((and cases cited therein).    Not a single case defines said coverage as coverage that necessarily or by definition, precludes P&I crew coverage. See, Id.  In fact, there is a recognition that crews may, in fact (as was the case with Mr. Russo) be working aboard a vessel when at port and under port risk coverage. Noe Lara v. Arctic King Ltd., 2001 AMC 2665 (W.D. Wash.  2001)(Court found that injured plaintiff was not a seaman or crewmember while working on vessel tied at pier, and in so doing noted the nature and scope of port risk coverage: "The fact the vessel remained tied to a pier obviously eliminated many of the peculiar risks that seaman face...The fact that defendant had adjusted the vessel's insurance coverage to a "port risk" basis is further recognition of the reduced risks to which the vessel, and those [seamen]working on board, were subjected.").

In short, not only is custom and usage evidence  not admissible to define the "scope" of port risk coverage to NAS' liking, there also is no legal authority to support  NAS' self-serving definition.

NAS' memorandum does not address the unique legal issues involved, to wit, that its primary witness testimony is discredited by its own Rule 30(b)(6) designee, and that its own

paper trail clearly shows that P&I crew coverage was in effect on the day Matteo Russo was injured.  See, November 14, 2003 – Houde memo to underwriter (M&J Corp. Statement of Material Facts No. 10) and McVey December 5, 2005 email to underwriter – (M&J Corp. Statement of Material Fact No. 15).   Rather, NAS ineffectually relies on broad summary judgment principles such as viewing the evidence in the light most favorable to the non-moving party and that "the movants evidence must be so powerful that no reasonable jury would be free to disbelieve it."  (NAS opposition p.11).

The case at bar is not a jury trial.  The essential witnesses have all been deposed and their deposition transcripts are part of the summary judgment record as are all relevant exhibits.  There is no additional evidence which could be reasonably anticipated to be available at trial which is not now before this Court, and in particular, none that would support any "meeting of the minds" relative to an alleged oral request for a preclusion of P&I crew coverage.   See Lamata v. Zulla, 14 Mass. L. Rep 502, 2000 Mass. Supra-Lexis (M&J Corp. memo p.14).

While the insured does bear the burden of proving that a loss manifested itself during the marine insurance policy period, once shown, the burden then shifts to the insurer to prove any policy exclusions. New Hampshire Insurance Co., v. Martech USA, Inc., 993 F. 2d 1195, 1200 (5th Cir. 1995); See, also, Panko Architects, Inc., v. St. Paul Fire And Marine Insurance, Co., 1996 U.S. Dist. LEXIS 4814 (N.D. Cal. 1996).

It is without question, that the "loss" occurred during the subject policy period. (Defendants' Statement Of The Material Facts Of Record…" paragraph 1-3). Consequently, "[u]nder federal maritime law" the burden is on the insurer, NAS, to prove a policy exclusion in order to avoid coverage. See,  New Hampshire Insurance Co., v. Martech

6

USA, Inc., 993 F.2d at 1199.  NAS cannot sustain its burden at this time nor will it be able to sustain its burden at trial.

There are no material facts in dispute.  M&J Corp.'s position is adequately supported by well-established principles of insurance contract interpretation, and it is entitled to a summary judgment as a matter of law.

February 16, 2006

        Matteo Russo,
        By his attorney,
        JOSEPH G. ABROMOVITZ, P.C.

        s/Joseph G. Abromovitz
        _____
        Joseph G. Abromovitz, Esquire
        BBO No. 011420
        858 Washington Street, 3rd Floor
        Dedham, MA 02026
        Phone:  (781) 329-1080

        The Defendant,
        Mary & Josephine Corporation,
        By its attorney,

        s/Bertram E. Snyder
        _____
        Bertram E. Snyder, Esquire
        BBO No. 471320
        Looney & Grossman LLP
        101 Arch Street
        Boston, MA 02110
        Phone:  617-951-2800

**CERTIFICATE OF SERVICE**

  I, Joseph G. Abromovitz, hereby certify that on the 16th day of February 2006, I served a copy of this document by Email and first class mail, postage prepaid to the following counsel of record:

Leonard W. Langer, Esquire
Tompkins, Clough, Hirshon & Langer, P.A.
Three Canal Plaza
P.O. Box 15060
Portland, ME 04112-5060

                s/Joseph G. Abromovitz
                _____
                Joseph G. Abromovitz