# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NORTH AMERICAN SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | Civil Action |
| | ) | Case No. 04-CV-04-10374-WGY |
| *Plaintiff* | ) | |
| v. | ) | |
| | ) | |
| MARY & JOSEPHINE CORP. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MATTEO RUSSO, | ) | |
| *Defendant*s | ) | |

## JOINT PRETRIAL MEMORANDUM

NOW COME the parties by and through their counsel, and pursuant to Rule 16.5,

Local Rules of the United States District Court for the District of Massachusetts and 5.01 of

the District of Massachusetts Expense and Delay Reduction Act, submit the following Joint

Pretrial Memorandum.

    1.    <u>Concise Summary of Evidence</u>:

        a.    <u>Plaintiff North American Specialty Ins. Co.</u>

    Starting in August, 2001, Defendant Mary & Josephine Corp., through Defendant
Matteo Russo, arranged for insurance on the F/V MARY & JOSEPHINE through Ocean
Marine Insurance Agency, Inc., a marine insurance broker. Mr. Russo was the person at
Mary & Josephine Corp. responsible for arranging coverage for the F/V MARY &
JOSEPHINE, and was very familiar with the various marine coverages available to
commercial fishing vessels. Almost immediately after coverage was initially bound, Matteo
Russo commenced a course of dealing whereby he regularly revised the vessel's coverages to
minimize the insurance premiums. Such course of dealing included regular requests that the
F/V MARY & JOSEPHINE be placed on "Port Risk" coverage when she was not fishing.
The purpose of placing the vessel on Port Risk coverage was to avoid the significant
premiums charged for crew protection & indemnity ("P&I") when the vessel was not fishing.
Not only was Mr. Russo aware of the savings achieved by placing the vessel on Port Risk
coverage, between August, 2001 and December, 2003, he had a number of conversations

with Mr. Robert McVey, an insurance broker at Ocean Marine Insurance Agency, Inc., during which Mr. McVey discussed with Mr. Russo the fact that by placing the MARY & JOSEPHINE on Port Risk, there would be no crew P&I coverage.

Each time that Mr. Russo requested that the insurance coverage for the F/V MARY & JOSEPHINE be changed, an endorsement was prepared by Ocean Marine Insurance Agency and forwarded to Mary & Josephine Corp.  When the endorsement reflected a period of Port Risk coverage, the endorsement was not sent until after the Port Risk period ended, and a return premium had been calculated.  If the policy renewed while the vessel was on Port Risk coverage, as was the case in August, 2003, an endorsement was prepared and a return premium calculated through the end of the policy year, and then forwarded to Mary & Josephine Corp.

In December, 2002, the F/V MARY & JOSEPHINE was placed on Port Risk coverage by the underwriter for failure to complete various repairs mandated by the underwriter.  Knowing that one crewman would be needed to complete the repairs, and knowing that Port Risk coverage did not provide any crew P&I coverage, the parties agreed that the policy should be specifically endorsed to include P&I coverage for one crewman during the port risk period.  An appropriate endorsement was prepared and forwarded to Mary & Josephine Corp., together with the return premium.

On October 3, 2003, Mr. Russo called Robert McVey at Ocean Marine Insurance Agency and told him that the MARY & JOSEPHINE had not been fishing since May 1, 2003, and wanted the vessel placed on Port Risk coverage retroactive to May 1, 2003, and then continuing into the future as long as the vessel remained in port.  He specifically told Mr. McVey that he did not want any crew P&I coverage during the period the vessel was on Port Risk.  Ocean Marine Insurance Agency arranged to have the subject policy endorsed to place the MARY & JOSEPHINE on port risk coverage, with no crew P&I, as specifically requested by Mr. Russo, and as was the usual practice.  On December 3, 2003, while the vessel was still subject to the Port Risk endorsement, Mr. Russo was injured on the vessel.

On January 16, 2004, Matteo Russo filed a complaint against Mary & Josephine Corp. in the United States District Court for the District of Massachusetts, docket no. 04-cv-10108 WGY.  Mary & Josephine Corp. hereupon made a demand upon North American Specialty Ins. Co. for a defense and indemnity pursuant to the subject policy.  By letter dated January 26, 2004, North American Specialty Ins. Co. denied Mary & Josephine Corp. request, but agreed to provide Mary & Josephine Corp. with a defense pursuant to a reservation of rights, all at no cost to Mary & Josephine Corp.  In its letter of denial, North American Specialty advised Mary & Josephine Corp. that it would be filing a declaratory judgment action to determine its obligation to indemnify and defend Mary & Josephine Corp. with regard to the claims being asserted by Matteo Russo;

On February 25, 2004, North American Specialty Ins. Co. filed the within action for Declaratory Judgment;

On February 8, 2005, Matteo Russo dismissed his complaint in the matter of <u>Matteo Russo v. Mary & Josephine Corp.,</u> docket no. 04-cv-10108 WGY, without prejudice.  During the court ordered mediation in the declaratory judgment action, counsel for Matteo Russo advised the court that Mr. Russo would not be in a position to make a settlement demand in the underlying action until the end of calendar year 2006.

On December 7, 2005, Matteo Russo re-filed his complaint against Mary & Josephine Corp. sub-nom <u>Matteo Russo v. Mary & Josephine Corp.,</u> docket no. 05-cv-12458 RBC.

        b.      <u>Defendants Mary & Josephine Corp. and Matteo Russo</u>

At all material times the Mary & Josephine Corporation (M&J Corp.) owned the F/V MARY & JOSEPHINE.  At all material times Salvatore Russo owned 100% of the stock of the M&J Corp.

On or about December 3, 2000 Matteo Russo, the captain of the F/V MARY & JOSEPHINE, sustained serious injuries in an accident that occurred in Gloucester, Massachusetts when he was performing work aboard the vessel that was required by North American Specialty Ins. Co. (NAS) as a result of a survey on said vessel.  The survey was conducted at the request of the insurance broker, Ocean Marine Ins. Co. (OMI) who was acting as an agent of NAS.

At the time of Matteo Russo's accident the M&J Corp. was insured through the plaintiff, NAS, for any liability that it had to a crewmember injured aboard its vessel pursuant to two policies of protection and indemnity insurance, the first policy in the amount of $250,000 and the second policy in the amount of $750,000.  During the policy year (August 13, 2003-August 13, 2004) the F/V MARY & JOSEPHINE, as were all draggers fishing in the North Atlantic, was significantly limited in the number of days that it could actively fish by government regulations.  When the F/V MARY & JOSEPEHINE was not fishing it would typically be moored at the Jodrey State Pier in Gloucester, Massachusetts pursuant to a written, self-renewing lease.

The subject lease, which concerned only the F/V MARY & JOSEPHINE, was entered into on July 1, 2000 between the Massachusetts Development Finance Agency acting on behalf of the Commonwealth of Massachusetts and as a managers of the Jodrey State Pier and Salvatore Russo, 100% owner of the stock of the M&J Corp.  Pursuant to Paragraphs 4 and 6 of said lease the vessel owner was required to have available to it at all times that the vessel was tied to the Jodrey State Pier insurances to protect it against, *inter alia*, crewmembers becoming injured while working aboard the vessel.

The evidence will establish that the Russo family, consisting of Salvatore Russo and his sons, Matteo Russo and Jerry Russo, collectively owned and operated three vessels.  The largest vessel of the three, the F/V MARY & JOSEPHINE, would fish offshore and use its limited fishing days for the cold weather months typically fishing in the time frame of roughly November/December through March.  In the warmer months, customarily, Matteo

Russo and his brother, Jerry Russo would work the smaller boats. Given the limited number of fishing days allowed by the United States Marine Fisheries Service it was quite common for the F/V MARY & JOSEPHINE to remain at the dock for many months. Customarily what would happen during that time frame is that needed repairs would be made aboard the vessel both by members of the crew of the F/V MARY & JOSEPHINE, including its captain, Matteo Russo, and third party contractors. As noted the vessel's lease with the State Pier required that it be insured against, *inter alia,* anybody getting hurt on the vessel.

Consistent with the usual practice of underwriters for commercial fishing vessels the plaintiff, through its agent, OMI, the broker that sold the insurances for the Plaintiff, NAS, to the M&J Corp., contracted with Marine Safety Consultants to conduct a survey of the F/V MARY & JOSEPHINE to determine and identify any needed repairs. That survey was performed on October 1, 2003. As was the practice of the surveyor, Neil Stoddard, he would handwrite a "punch list" of items that needed to be attended to in order for the vessel to be insurable and either hand-deliver a copy to Matteo Russo or leave a copy of said "punchlist" at a designated location aboard the vessel. A copy of the handwritten list was left aboard the vessel at its designated location on October 1, 2003 by Mr. Stoddard following the survey.

It had been the intent of the M&J Corp. to commence fishing operations for the cold weather months with the F/V MARY & JOSEPHINE in late November or early December 2003. However, based on the surveyor's list, it was going to take some time to carry out the repairs aboard the vessel. Accordingly, on October 3, 2003, Matteo Russo contacted Robert McVey of OMI, the insurance broker through whom M&J Corp. contracted to purchase the insurance for the vessel from NAS and informed McVey that the vessel had not fished since May 2003, had been tied up at the pier since that time and would remain at the pier until the repairs were carried out. Accordingly Matteo Russo requested that the vessel owner be given a credit against the paid insurance premiums for "port risk" because, quite obviously, a vessel sitting at the dock is not subjected to the same potential hazards as a vessel actively engaged in fishing operations on the high seas.

The evidence will establish that Mr. Russo communicated his request to Robert McVey by cell phone and McVey instructed Mr. Russo to call Lynnane Houde, the OMI office administrative person who handled the paperwork associated with requests of this nature. Both Mr. McVey and Ms. Houde testified as Rule 30(b)(6) designees on behalf of NAS.

Mr. Russo will testify that he never understood that when a vessel was on port risk that meant there was no crew P&I coverage. Nor did he have such understanding through any trade organization or informal discussions among other commercial fishermen or boat owners in the Port of Gloucester or elsewhere. He will further testify that he was never so informed by either McVey, anyone else at OMI or anybody on behalf of any marine underwriter at any time prior to his injury on December 3, 2003. And he never asked or told McVey during their October 3rd conversation that he wanted to eliminate **any** crew P&I coverage when the vessel was on port risk during the subject policy period.

On October 3, 2003, as directed, Matteo Russo spoke with Ms. Houde and requested that the vessel be designated as on "port risk" since May, 2003 and that a credit issue.  At no point in time during his conversation with Ms. Houde did Mr. Russo request that any crew protection and indemnity insurance be canceled for the period that the vessel was going to be on port risk and Ms. Houde so acknowledged in her deposition testimony.  Ms. Houde acknowledged that Mr. Russo said nothing about the existing crew protection and indemnity coverage during this conversation, the only communication she had with Matteo Russo or anybody on behalf of the vessel owner prior to Matteo Russo's accident.

Ms. Houde testified that in order for existing protection and indemnity insurance to be canceled she could only do so through written permission of the underwriter and then, with its authority, she would amend the insurance contract by means of an "endorsement".  She neither requested such authorization to issue an "endorsement" eliminating crew P&I coverage; nor did such a directive issue at any point in time from NAS to her prior to Matteo Russo's accident on December 3, 2003.  Per the insurance contract that issued on August 13, 2003 that was in effect at the time of Matteo Russo's accident the F/V MARY & JOSEPHINE was insured for a crew of 3 to 4 per the protection and indemnity policy with NAS.

On December 3, 2003 Matteo Russo was working aboard the F/V MARY & JOSEPHINE which was tied up at the Jodrey State Pier in Gloucester.  The major repair that had been directed by Surveyor Stoddard was replacement of the outriggers, extendable vessel arms that are used to stabilize it during fishing operations.  The evidence will establish that the M&J Corp. contracted with a third party for the fabrication and installation of the outriggers.  That work had been accomplished by December 3rd.  The last task necessary in order to render the outriggers functional for use aboard the vessel was the installation of cables that would connect the furthest end of the outrigger to the top of the mast and be used to lower the outriggers into position for use during dragging operations and pull them out of position when they were not being used.

At the time of the accident the outrigger in question was extended to its fully horizontal "working position" and was held in that position by a rope that was tied to the end of the outrigger and run through a pulley attached to the top of the mast and tied off to a cleat that had been welded to the net drum aboard the vessel.  The outrigger was designed to have persons crawl out onto it and to carry weights in excess of 300 pounds extending off its end.  Matteo Russo was in the process of crawling out on the outrigger to obtain a measurement of the needed length of the cable when suddenly and without warning the cleat to which the rope had been attached broke loose of its weld which literally bounced Mr. Russo up in the air, landing him face down on the outrigger and then thrust him into the water.  In the accident he suffered serious injuries to his facial bone structure, one wrist and one knee.

The evidence will establish that the accident was promptly reported to OMI.  While in the hospital Mr. Russo received a phone call from OMI's Robert McVey expressing his condolences regarding the accident and informing Mr. Russo that the underwriter was not obligated to cover Mr. Russo's claim under the protection and indemnity provisions of the subject insurance contract because, mistakenly,  Mr. McVey believed Mr. Russo to be a part

owner of the Mary & Josephine Corporation and owner/crewmembers were excluded from P&I coverage under the subject policy.  Mr. Russo informed Mr. McVey that while he was a captain of the F/V MARY & JOSEPHINE he was not a part owner of the M&J Corp. and had never been; that his father, Salvatore Russo, at all material times had been the sole 100% shareholder of M&J Corp.  This information prompted Mr. McVey to send an email to the underwriter on December 5, 2003 wherein he stated, in relevant part,

> "I have just finished going over the claim involving Matt Russo and realized that he is covered as a crewmember.  His father Sal is listed as 100% ownership and Matt being the captain.  Matt is listed as part owner on the other two vessels F/V JOSEPHINE and F/V DAMISCOTTA. They are covered for three/four men on the Mary & Josephine."

This position is confirmed by a further email from another employee of OMI, Marie Limoge, under date of December 24, 2003.  In her Email Ms. Limoge informs NAS that the vessel has resumed fishing operations, is no longer on port risk, and further states, "The crew P&I is already in place".

The evidence will establish that the policy year during which Matteo Russo was injured was the third policy year that NAS provided protection and indemnity insurance coverage for the M&J Corp., purchased through OMI, NAS being the underwriter during the subject policy year and the immediate preceding policy year (August, 2002 thru August, 2003).  The evidence will establish that the P&I insurance contracts in effect at the time of the accident are completely unambiguous in terms of their providing P&I coverage of three to four crewmembers for the F/V MARY & JOSEPHINE at the time of the accident.  The evidence will establish that the manner in which an insurance contract is amended is always in writing and always pursuant to a document called an "endorsement."  The evidence will establish that at no point in time prior to Matteo Russo's accident did an endorsement issue excluding crew P&I coverage when the F/V MARY & JOSEPHINE WAS on port risk and when an endorsement finally did issue relative to port risk coverage on or about February 16, 2004 it was completely silent on the issue of whether crew P&I coverage continued during the period of time that the vessel was on port risk.

The evidence will further establish that the only point in time when the F/V MARY & JOSEPHINE carried less than three to four men P&I crew coverage during the three year period of time it was insured thru OMI was during policy year August 2002 thru August, 2003 when the number of covered crewmembers was reduced to one.  That was on or about December 12, 2002, well before the contract at issue and during a completely different contract period.  The one crewmember who remained covered was Matteo Russo who was the crewmember of the F/V MARY & JOSEPHINE who typically would perform work aboard the vessel during port risk coverage.

<u>Further Concise Summary of Evidence Solely for Defendant Mary & Josephine</u>

The Mary & Josephine Corporation has a counterclaim against the plaintiff for breach of contract and violation of G.L. c. 93A.

In summary, by refusing to honor its obligations under the insurance contract when it has no evidence to support its position and, to the contrary, seeking a judicial determination through the within action that it has no obligation to either defendant, the defendant, M&J Corp., has incurred tens of thousands of dollars in fees and costs. These are direct damages following from the breach of contract by the plaintiff, NAS, in denying coverage and filing the subject declaratory judgment action.

It is further the position of the defendant, M&J Corp., that the plaintiff's conduct herein is in violation of G.L. c. 93A. Not only is the NAS' position violative of the provisions of G.L. c. 176D § 3(9)(a) but it also violates the Massachusetts common law doctrine of good faith and fair dealing. <u>Anthony's Pier Four, Inc. v. HBC Associates</u>, 411 Mass. 451, 471-472 (1991); <u>Blank v. Chelmsford OBGyn</u>, P.C., 420 Mass 404, 407 (1995). Given the absence of any documentation to support the position of North American Specialty Insurance Company and the binding effect of the testimony of its Rule 30(b)(6) designees the conduct of North American Specialty Insurance Company is tantamount to bad faith.

2.      <u>Facts Established by Pleadings or by Stipulation:</u>

   a.      Mary & Josephine Corp. is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts;

   b.      From August 13, 2001 to and including December 4, 2003, Mary & Josephine Corp. owned the F/V MARY & JOSEPHINE;

   c.      North American Specialty Insurance Company is a corporation duly organized and existing pursuant to the laws of the State of New Hampshire;

   d.      During all times relevant to this action, North American Specialty Insurance Company was authorized to do business in the Commonwealth of Massachusetts;

   e.      At all time relevant to this matter, Matteo Russo was a resident of Gloucester, Massachusetts, and was responsible for procuring insurance coverage for the F/V MARY & JOSEPHINE;

   f.      Matteo Russo arranged with Ocean Marine Insurance Agency, Inc. of Warwick, Rhode Island to procure insurance coverage for the F/V MARY & JOSEPHINE for the period August 13, 2001 - August 13, 2002 through Sunderland Marine Mutual Insurance Company Limited,

which, in turn, arranged for Fairfield Insurance Company to write Policy No. MPC146/SM114;

g.    Matteo Russo arranged with Ocean Marine Insurance Agency, Inc. to procure insurance coverage for the F/V MARY & JOSEPHINE for the period August 13, 2002 - August 13, 2003 through Sunderland Marine Mutual Insurance Company Limited, which, in turn, arranged for North American Specialty Insurance Company to write Policy No. DMM0000003-00;

h.    Matteo Russo arranged with Ocean Marine Insurance Agency, Inc. to procure insurance coverage for the F/V MARY & JOSEPHINE for the period August 13, 2003 - August 13, 2004 through Sunderland Marine Mutual Insurance Company Limited, which, in turn, arranged for North American Specialty Insurance Company to write Policy No. DMM0000003-01;

i.    On May 1, 2003, the F/V MARY & JOSEPHINE ceased fishing operations, and did not return to fishing operations until December 21, 2003;

j.    During the period May 1 – December 21, 2003, the F/V MARY & JOSEPHINE did not participate in any fishing operations;

k.    The purpose of placing a commercial fishing vessel on "Port Risk" coverage is to reduce the amount of the premiums charged for the insurance coverage;

l.    On October 3, 2003, Matteo Russo requested that Ocean Marine Insurance Agency, Inc. arrange to have the F/V MARY & JOSEPHINE placed on "Port Risk" coverage retroactive to May 1, 2003;

m.    On October 3, 2003, and again on November 21, 2003, Ocean Marine Insurance Agency, Inc. informed Mary & Josephine, Inc. and Matteo Russo in writing that the F/V MARY & JOSEPHINE was covered by Port Risk coverage only, and that when the vessel returned to full fishing operations, notice should be provided to Ocean Marine Insurance Agency, Inc. so that the policy could be amended appropriately;

n.    At no time from October 3, 2003 through December 4, 2003 did Mary & Josephine, Inc. or Matteo Russo ever advise Ocean Marine Insurance Agency, Inc. that the F/V MARY & JOSEPHINE had returned to active fishing, nor had there been a request to place the Vessel back on full operational coverage;

3.28.06-3                                    8

o.    On December 3, 2003, the F/V MARY & JOSEPHINE was on "Port Risk" coverage;

p.    On December 3, 2003, while working on the outriggers aboard the F/V MARY & JOSEPHINE, Matteo Russo was injured;

3.    <u>Contested Issues of Fact</u>:

a.    Whether Matteo Russo was aware that when the F/V MARY & JOSEPHINE was placed on "Port Risk" coverage, there would be no crew protection and indemnity coverage;

b.    Whether Matteo Russo told Robert McVey on October 3, 2004, that he did not want any crew protection and indemnity coverage;

c.    Whether Robert McVey had one or more conversations with Matteo Russo between August 13, 2001 and October 3, 2003 during which Robert McVey told Matteo Russo that when a commercial fishing vessel is placed on Port Risk coverage, there is no crew protection and indemnity coverage;

d.    Whether there is any written documentation from Mary & Josephine Corp., Matteo Russo, Ocean Marine Insurance Agency, Sunderland, North American Specialty, or from anyone acting on behalf of Ocean Marine Insurance Agency, North American Specialty and/or Sunderland quoting and/or stating that Matteo Russo had requested that P&I coverage for the crew be eliminated and/or excluded while the vessel was on port risk during the policy period of August 13, 2003 through August 14, 2004;

e.    Whether there are any words or terms, or any language within the subject insurance policy or within any endorsement to the policy stating that protection and indemnity coverage for crewmembers is/was excluded while the vessel is/was on port risk during the policy period;

f.    Whether there is any written documentation from Ocean Marine Insurance Agency, Sunderland, North American Specialty or from anyone acting on their behalf advising Matteo Russo or the M&J Corp. that when a vessel is placed on port risk coverage there is no P&I coverage for the crew.

g.    Whether there is any writing that was presented to Mary & Josephine Corp. or any one affiliated with Mary & Josephine Corp. by or on

3.28.06-3

9

behalf of NAS that says that when a vessel is on port risk that there is no crew protection and indemnity insurance coverage;

h.    Whether there was a custom and practice in the marine insurance industry in Massachusetts and Rhode Island in December, 2003 to the effect that when a vessel was on "port risk" there was no crew P&I coverage;

i.    If such "custom and practice" can be proven was the defendant, Mary & Josephine Corp. and/or Matteo Russo aware of such practice.

j.    Whether North American Specialty Insurance Company misrepresented facts or insurance policy provisions relating to coverages at issue in this matter;

k.    Whether North American Specialty Insurance Company compelled Mary & Josephine Corp. to litigate to recover amounts due under an insurance policy;

l.    Whether North American Specialty Insurance Company failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim for coverage;

m.    Whether North American Specialty Insurance Company conducted a reasonable investigation based on all of the available information.

n.    Whether NAS, in denying coverage to M&J Corp. for Matteo Russo's injuries, breached the covenant of good faith and fair dealing that it owed to M&J Corp.;

o.    On January 16, 2004, Matteo Russo filed a complaint against Mary & Josephine Corp. in the United States District Court for the District of Massachusetts, docket no. 04-cv-10108 WGY;

p.    By letter dated January 26, 2004, North American Specialty Ins. Co. denied coverage to Mary & Josephine Corp. for indemnity for Matteo Russo's claim, but agreed to provide Mary & Josephine Corp. with a defense to Mary & Josephine Corp. in the underlying case of Matteo Russo v. Mary & Josephine Corp. pursuant to a reservation of rights, all at no cost to Mary & Josephine Corp.

q.    In its letter of denial, North American Specialty Insurance Company advised Mary & Josephine Corp. that it would be filing a declaratory judgment action to determine its obligation to indemnify and defend

Mary & Josephine Corp. with regard to the claims being asserted by Matteo Russo;

r.     On February 25, 2004, North American Specialty Ins. Co. filed the within action for Declaratory Judgment;

s.     On February 8, 2005, Matteo Russo and Mary & Josephine Corp. filed a Notice of Dismissal, without prejudice, in the matter of <u>Matteo Russo v. Mary & Josephine Corp.,</u> docket no. 04-cv-10108 WGY;

t.     On December 7, 2005, Matteo Russo re-filed his complaint against Mary & Josephine Corp. sub-nom <u>Matteo Russo v. Mary & Josephine Corp.,</u> docket no. 05-cv-12458 RBC;

u.     During the court ordered mediation in the within action, counsel for Matteo Russo advised the court that Mr. Russo would not be in a position to make a settlement demand in the underlying action until the end of calendar year 2006.

v.     Whether Matteo Russo had any ownership interest in Mary & Josephine Corp., or was an officer or director of the company.

4.     <u>Jurisdictional Questions:</u>     None

5.     <u>Pending Motions:</u>     None

6.     <u>Issues of Law, Including Evidentiary Issues</u>:

a.     A policy of marine insurance may be amended orally, which amendment is binding on the parties to the policy. *See Grande v. St. Paul Fire & Marine Insurance Co.*, 365 F. Supp. 2d 57, 63 (D. Me. 2005), *aff'd,* 2006 U.S. App. LEXIS 2567(1st Cir. Feb 2, 2006); *Acadia Insurance Co. v. Allied Marine Transport LLC*, 151 F. Supp. 2d 107, 125 (D. Me. 2001);

b.     Mary & Josephine Corp.'s entitlement to damages pursuant to MA Chp 93A and 176D;

c.     Whether the parole evidence rule applies to Matteo Russo's requests to orally amend the marine insurance policy in effect on the F/V MARY & JOSEPHINE, and if so to what extent.

d.     Whether the subject marine insurance contract is ambiguous as concerns the availability of crew protection and indemnity insurance coverage on December 3, 2003.

3.28.06-3

11

e.   As a matter of law whether there was an oral contract to eliminate crew protection and indemnity coverage for crewmembers while the vessel was on port risk?

f.   Whether, as a matter of law, when a vessel is on port risk does that eliminate crew protection and indemnity coverage?

g.   Is custom and practice evidence admissible, to the extent it can be proven, to vary the terms of the written insurance contract.

7.   <u>Amendments to the Pleadings</u>:

a.   <u>Defendant Mary & Josephine Corporation</u>

Defendant, Mary & Josephine Corporation wants to make clear that its G.L. c. 93A claim is not only inclusive of the violation of the applicable provisions of G.L. c. 176D but also includes a claim that the plaintiff's conduct violates G.L. c. 93A because it violates the principal of good faith and fair dealing.  <u>Anthony's Pier Four, Inc. v. HBC Associates</u>, 411 Mass. 451, 471-472 (1991); <u>Blank v. Chelmsford OBGyn</u>, P.C., 420 Mass 404, 407 (1995).

Plaintiff objects to any amendment to the pleadings at this late date, and does not agree that Defendant Mary & Josephine Corp.'s pleadings to date assert a claim for violation of any "principle of good faith and fair dealing" pursuant to Massachusetts law.

8.   <u>Additional Matters In Aid in Disposition of Case</u>:

a.   <u>Defendants, M&J Corp. and Matteo Russo</u>:

It is the defendants' position that parol evidence is completely inadmissible on the subject of whether there was a custom and practice in the industry to the effect that when a vessel is on port risk there was no crew P&I coverage.  In an abundance of caution defendants may call various boat owners from Gloucester, New Bedford and Rhode Island to provide testimony that they were unaware of any such custom and practice.  Because of the uncertainty of the trial date defendants request permission to use deposition testimony in lieu of live testimony of these various witnesses irrespective of their "unavailability" within the meaning of Fed. R. Civ. P.  32(a)(B).

9.   <u>Probable Length of Trial</u>:    2 days

10.    <u>Identification of Witnesses</u>:

    a)    <u>Plaintiff North American Specialty Ins. Co.</u>

        i.    Robert McVey
             Ocean Marine Insurance Agency, Inc.
             33 College Hill Road – Building 10
             Warwick, RI 02886
             (401) 822-0080

        ii.    Lynnanne Houde
             Ocean Marine Insurance Agency, Inc.
             33 College Hill Road – Building 10
             Warwick, RI 02886
             (401) 822-0080

        iii.    William Scola
             Ocean Marine Insurance Agency, Inc.
             33 College Hill Road – Building 10
             Warwick, RI 02886
             (401) 822-0080

        iv.    Marie Limoge
             Ocean Marine Insurance Agency, Inc.
             33 College Hill Road – Building 10
             Warwick, RI 02886
             (401) 822-0080

        v.    Craig McBurnie
             Sunderland Marine Mutual Insurance Company, Ltd.
             Salvus House
             Aykley Heads
             Durham,  DH1 5TS
             United Kingdom
             870-084-3227

        vi.    Allan L. Leavitt
             North American Specialty Ins. Co.
             The Center of New Hampshire
             650 Elm St.
             Manchester, N.H. 03101-2524
             603-644-6600

Plaintiff reserves the right to call any witnesses identified by any other party in this matter, and does not list those witnesses who may be called for purposes of impeachment or

rebuttal.  Plaintiff further reserves the right to call additional witnesses upon reasonable

notice to counsel for the other parties.

        b)      <u>Defendants Mary & Josephine Corp. and Matteo Russo</u>

           i.      Matteo Russo, Derby Street, Gloucester, MA

           ii.      Salvatore Russo, Gloucester, MA

           iii.      Portions of the Rule 30(b)(6) Depositions of the Plaintiff, NAS relative to the following witnesses:

                        a.      Robert McVey
                        b.      Lynnanne Houde
                        c.      William Scola

           iv.      Clark Sandler
                    Sandler Fisheries, Inc.
                    P.O. Box 1171
                    Gloucester, MA, 01930

           v.      Frank Raguso
                    9 Western Ave., Apt. 3
                    Gloucester, MA

           vi.      Neil Stoddard (surveyor)
                    Raynham Woods Executive Building
                    175 Paramount Drive
                    Raynham, MA 02767

      Defendants reserve the right to call any witnesses identified by any other party in this

matter, and do not list those witnesses who may be called for purposes of impeachment or

rebuttal.  Defendants further reserve the right to call additional witnesses upon reasonable

notice to counsel for the other parties.

      11.    <u>Proposed Exhibits</u>:

        a)      <u>Plaintiff North American Specialty Ins. Co.</u>

               *See* Exhibit A attached hereto

3.28.06-3                  14

     b)      <u>Defendants Mary & Josephine Corp. and Matteo Russo</u>

     i.      Lease dated July 1, 2000 between Massachusetts Development Finance Agency (Jodrey State Pier) and Salvatore Russo concerning the F/V MARY & JOSEPHINE;

     ii.      Two protection and indemnity insurance contracts issued by OMI on behalf of the plaintiff for the policy years August 13, 2003 through August 14, 2004;

     iii.      Stoddard handwritten survey;

     iv.      Stoddard typed survey;

     v.      Photos of the F/V MARY & JOSEPHINE;

     vi.      December 5, 2003 e-mail from Robert McVey (OMI) to Sunderland Marine;

     vii.      December 24, 2003 e-mail from Marie Limoge (OMI) to Sunderland Marine;

     viii.      Letter from Lynnanne Houde to Matt Russo dated December 18, 2002 regarding endorsement to the prior year P&I policy relative to port risk and reducing the P&I coverage to one crewmember for the period of December 9, 2002 to the expiration date of August 13, 2002.

     ix.      Endorsement dated February 16, 2004 to Policy No. DMM0000003-01 relative to port risk subject policy.

     x.      Letter from Lynnanne Houde to Matteo Russo dated February 16, 2004 enclosing the endorsement of February16, 2004 and advising of a return premium calculated at $3,117.

12.     <u>Objections</u>:

     <u>Plaintiff</u>:

a.     Plaintiff objects to any amendment of the pleadings at this late stage of the proceedings;

b.     Plaintiff objects to the designation of any portions of deposition transcripts at this late stage of the proceedings.  Further, the witnesses in question are currently scheduled to appear at trial and will be subject to cross-examination by counsel for Defendants;

c.    Plaintiff objects to Defendants' proposed witnesses Stoddard, Sandler, and Raguso on the grounds that they have not been previously identified as witnesses and their proposed testimony has not been disclosed.

d.    Plaintiff objects to any "boat owner" witnesses called by Defendants in this matter.

e.    Plaintiff reserves its objections to Defendants' exhibits until such time as until such time as counsel meet before the pretrial conference and discuss their respective positions re: exhibits.

<u>Defendants</u>

a.    Defendants object to proposed testimony of Craig McBurnie and Allan L. Leavitt as there has been no disclosure as to the anticipated testimony of either witness. Further if either witness is intending to testify on the issue of the scope of port risk coverage on P&I coverage per the subject P&I policy such testimony is inadmissible on a number of grounds, not the least of which is hearsay.

b.    Defendants reserve their objections to Plaintiff's proposed exhibits until such time as counsel meet before the pretrial conference and discuss their respective positions re: exhibits.

c.    Defendants object to Paragraphs o-u of the Contested Facts on the grounds that they are not relevant to this matter.

Dated this 28<u>th</u> day of March, 2006.

The Parties,
By their attorneys

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY, Plaintiff

<u>/s/   Leonard W. Langer</u>

Tompkins, Clough, Hirshon & Langer, P.A.
Three Canal Plaza
P.O. Box 15060
Portland, ME 04112-5060
(207) 874-6700
lwlanger@tchl.com

3.28.06-3                                          16

MARY & JOSEPHINE CORP., Defendant

/s/   Bertram E. Snyder
BBO # 471320

Looney & Grossman
101 Arch Street
Boston, MA 02110-1112
(617) 951-2800
BertSnyder@lgllp.com

MATTEO RUSSO, Defendant

/s/   Joseph G. Abromovitz
BBO # 011420

Law Offices of Joseph G. Abromovitz, P.C.
858 Washington Street, 3rd Floor
Dedham, MA 02026
(781) 329-1080
jga@jga-pc.com

EXHIBIT A

North American Specialty Ins. Co. Exhibit List

1.      Fairfield Insurance Company policy No. MPC146/SM114;

2.      Endorsement to Fairfield Insurance Company policy No. MPC146/SM114 placing the F/V MARY & JOSEPHINE on Port Risk coverage for the period 9/4/01 to 10/11/01;

3.      Endorsement to Fairfield Insurance Company policy No. MPC146/SM114 placing the F/V MARY & JOSEPHINE on Port Risk coverage for the period 12/4/01 to 2/20/02;

4.      Endorsement to Fairfield Insurance Company policy No. MPC146/SM114 amending the number of crew effective September 12, 2001 to August 13, 2002;

5.      Letter from Lynnanne Houde to Salvatore Russo dated September 18, 2001;

6.      Endorsement to Fairfield Insurance Company policy No. MPC146/SM114 placing the F/V MARY & JOSEPHINE on Port Risk coverage for the period 12/18/01 to 8/13/02;

7.      Endorsement to Fairfield Insurance Company policy No. MPC146/SM114 amending the number of crew effective December 7, 2001;

8.      Letter from Lynnanne Houde to Matteo Russo dated December 13,2001;

9.      Letter from Lynnanne Houde to Matteo Russo dated December 19, 2001 enclosing Endorsement effective 12/18/01;

10.      Handwritten notes dated January 30, 2002 and telephone message dated February 18, 2002;

11.      Endorsement to Fairfield Insurance Company policy No. MPC146/SM114 placing the F/V MARY & JOSEPHINE back on operational coverage effective February 19, 2002;

12.      Letter to Matteo Russo from Lynnanne Houde dated September 17, 2002 enclosing North American Specialty Insurance Company policy no. DMM0000003-00, effective from August 13, 2002 through August 13, 2003;

13.      Handwritten notes regarding policy changes requested by Mary & Josephine, Corp. and telephone conversations with Matteo Russo;

14. Letter from Lynnanne Houde to Salvatore Russo dated August 15, 2002;

15. Letter from Lynnanne Houde to Salvatore Russo dated September 3, 2002;

16. Endorsement to North American Specialty Insurance Company policy no. DMM0000003-00 placing the F/V MARY & JOSEPHINE on Port Risk coverage for the period September 10, 2002 through November 14, 2002;

17. E-mail from Lynnanne Houde to David Burke dated September 17, 2002;

18. Letter from Lynnanne Houde to Salvatore Russo dated October 3, 2002, together with Ocean Marine Insurance Agency check no. 6911;

19. Ocean Marine Insurance Agency check no. 8304 in the amount of $1,923.00;

20. Handwritten memo from Matt Russo to Lyn dated November 15, 2002;

21. E-mail from David Burke to Lynnanne Houde and Bill Scola dated December 4, 2002;

22. Endorsement to North American Specialty Insurance Company policy no. DMM0000003-00 placing the F/V MARY & JOSEPHINE on Port Risk coverage for the period December 9, 2002 through August 13, 2003;

23. Letter from Lynnanne Houde to David Burke dated December 9, 2002, with enclosures;

24. Letter from Lynnanne Houde to Matteo Russo dated December 18,2002;

25. Letter from Lynnanne Houde to Matteo Russo dated February 20, 2003 and signed by Matteo Russo dated February 28, 2003;

26. Endorsement to North American Specialty Insurance Company policy no. DMM0000003-00 placing the F/V MARY & JOSEPHINE back on operational coverage effective February 5, 2003;

27. Letter from Lynnanne Houde to Matteo Russo dated March 4, 2003;

28. North American Specialty Insurance Company policy no. DMM0000003-01, effective from August 13, 2003 through August 13, 2004;

29. Endorsement to North American Specialty Insurance Company policy no. DMM0000003-00 placing the F/V MARY & JOSEPHINE on Port Risk coverage for the period May 1, 2003 through August 13, 2003;

30.    Letter from Lynnanne Houde to Matteo Russo dated August 27, 2003, with enclosed check no. 8304 in the amount of $1,923.00;

31.    Letter dated October 3, 2003 from Lynnanne Houde to Matteo Russo;

32.    Letter dated October 14, 2003 from Lynnanne Houde to Matteo Russo;

33.    Letter dated December 3, 2003 from Lynnanne Houde to Matteo Russo enclosing Ocean Marine Insurance Agency check no. 8678 in the amount of $1,717.00;

34.    Reminder dated November 21, 2003 from Lynnanne Houde to Matteo Russo;

35.    Endorsement to North American Specialty Insurance Company policy no. DMM0000003-01 placing the F/V MARY & JOSEPHINE on Port Risk coverage for the period August 13, 2003 through December 21, 2003;

36.    E-mail from Craig McBurnie to Bob McVey dated December 8, 2003;

37.    Letter from Marie Limoge to Matt Russo dated December 24, 2003;

38.    Letter dated April 7, 2004 from Lynnanne Houde to Matteo Russo enclosing Ocean Marine Insurance Agency check no. 9140 in the amount of $3,117.00;

39.    Letter from Allan Leavitt of North American Specialty Ins. Co. Letter of Denial Josephine Russo dated January 26, 2004;

40.    Mary & Josephine Corp.'s Answers to Plaintiff's Interrogatories;

41.    Ocean Marine Insurance Agency check no. 7569 dated February 20, 2003 in the amount of $884.00;

42.    Ocean Marine Insurance Agency check no. 7517 dated February 11, 2003 in the amount of $1,625.00.


Defendant reserves the right to introduce any exhibits identified by any other party in this matter, and does not list any exhibits which may be used for purposes of impeachment or rebuttal.  Defendant further reserves the right to introduce any additional exhibits upon reasonable notice to counsel for the other parties to this matter.